George BOCHETTO, as Administrator of the Estates of Andrew Miller, Dec., Dennis Falize, Deceased, and Javier Terron Sancho, Deceased, and Mark Miller and Susan Marie Miller, Dirk Jan Falize, Karin Den Turk and Jose M. Terron Sancho, Appellants

v.

PIPER AIRCRAFT CO., American Capital, Ltd., & Dimeling Schreiber & Park, Honeywell International, Inc., Continental Motors, Inc., Teledyne Technologies, Inc., TDY Industries, Inc., Allegheny Technologies, Inc., and Allegheny Teledyne, Inc., Appellee.

Superior Court of Pennsylvania.

Argued Nov. 12, 2013.

Filed June 9, 2014.

Reargument Denied Aug. 7, 2014.

Laura E. Vendzules, Philadelphia, for George Bochetto et al., appellant.

Jordan Rand, Philadelphia, for Continental Motors, appellee.

Austin W. Bartlett, Philadelphia, for Honeywell International, Inc., et al., appellee.

John J. Hare, Philadelphia, for Piper Aircraft Co., et al., appellee.

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and MUSMANNO, J.

OPINION BY WECHT, J.:

George Bochetto, *et al.* (collectively, "Appellants"), appeal from the December 10, 2012 order entered in the Civil Division of the Court of Common Pleas of Philadelphia County. That order dismissed, with prejudice, Appellants' claims arising from a September 15, 2009 plane crash that occurred near Castro Verde, Portugal. Specifically, in its December 10, 2012 order, the trial court found that Piper Aircraft Corp., *et al.* (collectively, "Appellees"), had complied with the requirements of the court's earlier September 27, 2012 order, which conditionally dismissed Appellants' case on the grounds of *forum non conveniens* so long as the Appellees stipulated to accepting jurisdiction in Portugal. We vacate, and we remand for further proceedings consistent with this opinion.

The learned trial court has aptly set forth the factual and initial procedural history of this case, as follows:

The Model PA 34–2023 Seneca V aircraft [ ("the aircraft") ] at issue was manufactured by [Piper Aircraft Co. ("Piper")] in Florida in 1998. It was originally sold to Northern Air Inc. of Grand Rapids, MI, and then to S & S Aviation Inc. in Sylvania, Ohio. In 2001, [the aircraft] was sold to the Ben–Air Flight Academy in Belgium, where it was registered with the Belgium Civil Aviation Authority in January 2006. On June 18, 2009, Ben–Air leased the aircraft to a flight school in Portugal called [the] Aeronautical Academy of Evora ("AAE"). From June 18, 2009[,] until the crash on September 15, 2009, the aircraft was maintained by AAE and/or CAE Global Academy ("CAE").

AAE is an independent company but is part of the worldwide chain of flight schools operated by CAE. CAE operates flight schools in San Diego, CA and Phoenix, AZ. CAE has aviation training facilities in Morristown, NJ; Charlotte, NC; Dallas, TX; Miami, FL; and San Francisco, CA. AAE and CAE do not have facilities located in Pennsylvania or any connection to Pennsylvania.

On September 15, 2009, the aircraft was engaged in a nighttime training exercise when it broke up in flight and crashed in a field near Castro Verde, Portugal. All three occupants died: a flight instructor employed by AAE and two student pilots attending AAE. They were Spanish citizen Javier Terron Sancho (the instructor), Dutch citizen Dennis Falize, and Andrew Miller, who had dual Dutch/Australian citizenship.

[Gabinete de Prevenção e Investigação de Acidentes com Aeronaves ("GPIAA")], the Portuguese equivalent of the [National Transportation Safety Board ("NTSB")], investigated the crash. Experts participated in the accident investigation from Piper, Continental Motors [Inc. ("Continental")] (the engine manufacturer) and other American companies whose products were incorporated into the [aircraft]. The remains of the [aircraft] are stored at a Portuguese university.

The Orphans' Court of Philadelphia County appointed Pennsylvania attorney Robert C. Daniels to be the administrator of the Estates of Sancho, Falize, and Miller. [Attorney Daniels] and the parents of the victims brought this wrongful death and survival action in the Philadelphia County Court of Common Pleas on September 2, 2011. The parents of the victims are citizens of Spain, the Netherlands, and the Dutch Antilles–Caribbean.... After [Attorney Daniels'] death,

he was replaced by attorney George Bochetto as administrator of the Estates. Trial Court Opinion ("T.C.O."), 9/27/2012, at 1–3.

On or about September 2, 2011, Appellants filed suit against fourteen different American corporations under theories of strict products liability, negligence, breach of express and implied warranties, fraud, and civil conspiracy. *See* Appellants' Civil Complaint, 9/2/2011, at 37–79. These defendant-corporations included the following entities: (1) Piper, a Florida-based company that designed, manufactured and sold the aircraft; (2) Dimeling, Schreiber, & Park ("Dimeling"), a Philadelphia, Pennsylvania entity that Appellants allege oversaw and directed the activities of Piper; (3) American Capital Ltd. ("American Capital"), a West Conshohocken, Pennsylvania company that Appellants allege, together with Dimeling, directed the activities of Piper; (4) Continental Motors, Inc., ("Continental") the company responsible for the engine assembly in the aircraft; (5) Teledyne Technologies Incorporated; (6) TDY Industries, LLC; (7) Allegheny Technologies, Inc.; (8) Allegheny Teledyne Incorporated;[1] (9) Honeywell International, Inc. ("Honeywell"), a company responsible for the aircraft's auto-pilot system;[2] (10) McCauly Propeller Systems; (11) Textron, Inc.; and (12) Cessna Aircraft, Co.[3] Appellants did not file any claims against AAE or CAE. T.C.O. at 3.

On October 6, 2011, Piper removed the case to the United States District Court for the Eastern District of Pennsylvania, alleging diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* District Court Order, 1/6/2012, at 1. However, on January 6, 2012, the District Court entered an order granting Appellants' "Motion to Remand," returning the case to the Court of Common Pleas of Philadelphia County. Specifically, the District Court concluded that the initial removal was improper.[4]

---

1. Teledyne Technologies Incorporated, TDY Industries, LLC, Allegheny Technologies, Inc., and Allegheny Teledyne Incorporated are all companies that, like Continental, were responsible for the engine assembly in the aircraft. *See* Appellants' Brief at 8. The respective names of these companies in this opinion conform with the names represented as correct on the October 22, 2012 stipulation submitted on behalf of all six companies. *See* Stipulation for Continental, *et al.*, 10/22/2012, at 1.

2. Appellants list several alternative names for Honeywell in its brief, including Allied–Signal Inc., AlliedSignal Inc., Bendix/King, and Bendix/King General Aviation Division. Appellants' Brief at 8–9. Appellants' substantive discussion refers to all putative Honeywell entities collectively. *Id.* at 9 n. 7. Accordingly, so shall ours.

3. McCauly Propeller Systems, Textron, Inc., and Cessna Aircraft Company are no longer parties to the instant case. T.C.O. at 3. Specifically, Appellants settled their claims with these three companies while the case was pending before the District Court. *See* Appellants' Brief at 4 n.1. Accordingly, an order from the District Court, dated December 14, 2011, dismissed those respective claims. On March 26, 2012, a copy of that order was filed of record by the court of common pleas.

4. The District Court remanded the instant case back to the state court system upon the basis of the "forum defendant rule." District Court Order, 1/6/2012, at 3–4, 11. In relevant part, "[t]he federal removal statute, 28 U.S.C. 1441(b), provides that actions removed on grounds of diversity jurisdiction 'may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Id.* at 3. The District Court concluded: (1) that Dimeling was a "citizen" of Pennsylvania; (2) that Appellants had a cognizable claim against Dimeling; and (3) that Dimeling was not joined fraudulently. *Id.* at 4–10 (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852–53 (3d Cir.1992)). Thus, the District Court concluded that removal was improper.

On February 24, 2012, Piper, American Capital, and Dimeling filed a joint "Motion to Dismiss With Prejudice for *Forum Non Conveniens*" pursuant to 42 Pa.C.S. § 5322(e). In relevant part, the moving parties argued that the locus of the instant case more properly is situated in Portugal:

> This is a textbook case for dismissal based upon the doctrine of *forum non conveniens*. [The aircraft] was maintained in Portugal, the pilot was trained in Portugal, the underlying accident occurred in Portugal, the Portuguese government conducted the accident investigation, and all of the nonparty witnesses and relevant documents are in Portugal. All of the decedents are from Europe, and the real parties in interest in this case are from Europe. As several courts have concluded under similar circumstances, this case should be dismissed based upon *forum non conveniens*.

Motion to Dismiss for *Forum Non Conveniens*, 2/24/2012, ¶ 2. Appellants filed a response on April 2, 2012. On April 26, 2012, Piper, American Capital, and Dimeling filed a reply to Appellants' response. On July 19, 2012, Honeywell filed a motion to join in the February 24 motion to dismiss. Teledyne Technologies, TDY Industries, Allegheny Technologies, and Allegheny Teledyne did not respond. T.C.O. at 4–5. It also appears that Continental did not respond. On July 20, 2012, Appellants filed a supplemental response, and, on July 24, 2012, Piper, American Capital, and Dimeling filed a joint reply.

On September 27, 2012, the trial court entered an order that conditionally granted the motion to dismiss, but only if **all** defendant-corporations submitted written stipulations "(1) accepting service of process in a subsequent action brought in Portugal alleging the same injuries and damages as set forth in the within action;

(2) admitting jurisdiction in Portugal; and (3) waiving the statute of limitations defense in the subsequent action to be filed in Portugal." T.C.O. at 1. All stipulations were directed to be submitted within thirty days of the order's entry. *Id.*

On October 17, 2012, Piper, American Capital and Dimeling filed their respective stipulations. On October 22, 2012, Continental, Teledyne Technologies Incorporated, TDY Industries, LLC, Allegheny Technologies, Inc., and Allegheny Teledyne Incorporated filed a joint stipulation. That same day, Honeywell, the last remaining defendant, filed its stipulation. On December 10, 2012, the trial court entered a series of orders acknowledging and approving these stipulations. Accordingly, that same day, the trial court entered an order that dismissed Appellants' claims with prejudice.

On December 27, 2012, Appellants filed a timely notice of appeal. The trial court did not order Appellants to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b), and, Appellants did not file one. On February 1, 2013, the trial court filed a Rule 1925(a) opinion.

Appellants have raised the following issues for our consideration:

1. Did the lower court abuse its discretion in failing to determine the amount of deference due Appellants' choice of forum and, therefore, improperly shift the burden of proof to Appellants?

2. Did the lower court misapply the law by analyzing the *forum non conveniens* factors with respect to litigating in Pennsylvania, rather than the United States as a whole, versus Portugal?

Appellants' Brief at 6.

Initially, we note that the international character of this case does not substantively alter our approach in adjudicating

interstate issues of *forum non conveniens*. *See Aerospace Finance Leasing, Inc. v. New Hampshire Ins. Co.*, 696 A.2d 810, 813 (Pa.Super.1997). However, our standard of review in the interstate context of *forum non conveniens* has undergone significant changes since our holding in *Aerospace* was issued. Accordingly, the following discussion of our precedents aims to articulate and explain the current state of the law.

We begin by defining terms and parameters: "*Forum non conveniens* permits a court, exercising its discretion, to refuse to entertain a case even if jurisdictional requirements are met. Since the decision to dismiss is discretionary with the trial court, it is reversible only as an abuse of discretion." *Cinousis v. Hechinger Dep't Store*, 406 Pa.Super. 500, 594 A.2d 731, 731–32 (1991) (citing *Beatrice Foods Co. v. Proctor and Schwartz, Inc.*, 309 Pa.Super. 351, 455 A.2d 646, 650 (1982)). Codified at 42 Pa.C.S. § 5322(e), our interstate *forum non conveniens* statute [5] reads as follows:

> § 5322. **Bases of personal jurisdiction over persons outside this Commonwealth**
>
> *     *     *
>
> (e) **Inconvenient forum.**—When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S. § 5322.

> Our Supreme Court has adopted the Comment to Section 117(e) of the Restatement, Second, Conflict of Laws, in enunciating what the trial court is to

consider in deciding whether the doctrine of *forum non conveniens* requires dismissal: "The two most important factors look to retention of the case. They are (1) that since it is for the plaintiff to choose the place of suit, his choice of forum should not be disturbed except for weighty reasons, and (2) that the action will not be dismissed in any event unless an alternative forum is available to the plaintiff." *Plum v. Tampax, Inc.* [399 Pa. 553], 160 A.2d 549, 553 (Pa.1960).

*     *     *

To determine whether such "weighty reasons" exist as would overcome the plaintiff's choice of forum, the trial court must examine both the private and public factors involved. *Petty v. Suburban General Hospital* [363 Pa.Super. 277], 525 A.2d 1230, 1232 (Pa.Super.1987). The *Petty* Court reiterated the considerations germane to a determination of both the plaintiff's private interests and those of the public as defined by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 [67 S.Ct. 839, 91 L.Ed. 1055] (1947). They are:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the actions; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforceability of a judgment if one is

---

5. Pennyslvania's rule addressing *intrastate* questions of *forum non conveniens* that may arise between the counties of the Commonwealth is found at Pa.R.C.P. 1006(d)(1). "Regardless of the differences between a transfer of venue under Rule 1006 and dismissal under section 5322, both remedies are derivative of the common law doctrine of *forum non conveniens*." *Shears v. Rigley*, 424 Pa.Super. 559, 623 A.2d 821, 823–24 (1993).

obtained. The court will weigh relative advantages and obstacles to a fair trial.

\* \* \*

Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is appropriateness, too, in having the trial ... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

■ *Petty,* 525 A.2d at 1232 (quoting *Gilbert,* 330 U.S. at 508–09, 67 S.Ct. 839). *Engstrom v. Bayer Corp.,* 855 A.2d 52, 55–56 (Pa.Super.2004); *see Jessop v. ACF Industries, LLC,* 859 A.2d 801, 803 (Pa.Super.2004) (same). As our Supreme Court pointed out in *Plum,* "[t]hese two sets of factors are not mutually exclusive but rather supplement each other." *Engstrom,* 855 A.2d at 56 (citing *Plum,* 160 A.2d at 549).

As this case implicates international principles of *forum non conveniens,* our holding "of first impression" in *Aerospace* is especially instructive in setting forth our standard of review. The Pennsylvania Supreme Court's holding in *Plum* is also highly pertinent to our analysis, as that case also adjudicated an international issue of *forum non conveniens. See Plum,* 160 A.2d at 550 (stating that the plaintiff was a corporation based out of Denmark, and that the case turned on a question of whether Denmark or Pennsylvania was a more appropriate forum).

However, we note one caveat with regard to our standard of review. At the time it was decided, *Aerospace* set forth a standard of review different than the one we utilize today.[6] Specifically, our holding in *Aerospace* utilized a standard of review that typically is described in Pennsylvania law as the "oppressive and vexatious standard."[7] That standard made no reference to the private and public interest factors that were first delineated by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). However, in *Humes v. Eckerd Corp.,* 807 A.2d 290 (Pa.Super.2002), this Court held that it is appropriate to consider the *Gilbert* factors when adjudicating a question of *forum non conveniens* in the **interstate** context, declining to apply the standard utilized in *Aerospace. Humes,* 807 A.2d at 293–94 (citing *Poley v. Delmarva Power & Light Co.,* 779 A.2d 544, 546 (Pa.Super.2001)); *see also Engstrom,* 855 A.2d at 56 (in an interstate case, stating that appellants who "insist that ... the application of the public and private factors test was error" incorrectly invoked the standard of review for intrastate questions of *forum non conveniens* ). Thus, we conclude that the appropriate standard under which to evaluate the in-

6. In *Plum,* the Pennsylvania Supreme Court set forth a standard of review that referenced the factors first described in *Gilbert. Plum,* 160 A.2d at 552–53.

7. *See Wright v. Aventis Pasteur, Inc.,* 905 A.2d 544, 548 n. 9 (Pa.Super.2006) ("It bears mention that this Court has determined that the 'oppressive and vexatious' standard set forth by our Supreme Court in *Cheeseman v. Lethal Exterminator, Inc.,* 549 Pa. 200, 701 A.2d 156 (1997), applies only to *intrastate* forum challenges pursuant to Pa.R.C.P. 1006(d)(1), and not to *interstate* challenges pursuant to 42 Pa.C.S. § 5322(e), as that presented here." (citing *Humes,* 807 A.2d at 295) (emphasis in original)).

stant case is the one confirmed in the case law cited above. Nonetheless, notwithstanding this evolution in our standard of review, the international character of this case indicates that *Aerospace* remains our leading authority on substantive aspects of *forum non conveniens* law.

Before assessing the merits of Appellants' claims, we will address Appellants' insistence [8] that federal law should guide our resolution:

> [T]he United States Supreme Court has made clear that in the *forum non conveniens* context, Pennsylvania law is "identical" to federal law. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248 n. 13 [102 S.Ct. 252, 70 L.Ed.2d 419] (1981) ... *Aerospace*, 696 A.2d at 813 (finding reference to federal law on *forum non conveniens* was appropriate "[d]ue to this Commonwealth's dearth of forum transfer cases in an international context.").

It is, moreover, entirely appropriate for this Court to consider as persuasive authority unreported decisions of other jurisdictions, including the federal courts and, specifically, the Third Circuit. Reference to federal law is particularly appropriate here, as Pennsylvania state courts have had less occasion to determine *forum non conveniens* issues in the international context. *See Aerospace*, 696 A.2d at 813.

Appellants' Reply Brief at 6 (citations modified). Appellants are correct that Pennsylvania courts are permitted to turn to federal authorities for persuasive authority. However, Appellants have misapprehended the relative strength of Pennsylvania law regarding *forum non conveniens* in the international context.

■ We note the following well-settled principle of Pennsylvania law:

> [F]ederal court decisions **do not control** the determinations of the Superior Court. *Kleban v. Nat'l Union Fire Ins. Co.*, 771 A.2d 39, 43 (Pa.Super.2001). Our law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are **not binding** on Pennsylvania state courts, even when a federal question is involved.

*Werner v. Plater–Zyberk*, 799 A.2d 776, 782 (Pa.Super.2002) (emphasis added). In controversies that involve a "federal issue," and as to which the United States Supreme Court has not provided an "ultimate answer," it is appropriate for this Court "to follow Third Circuit precedent in preference to that of other jurisdictions." *Werner*, 799 A.2d at 782. However, the issues raised by Appellants implicate Pennsylvania's interstate *forum non conveniens* statute. *See* 42 Pa.C.S. § 5322(e).

*Aerospace* remains our leading precedent in the law of international *forum non conveniens* cases. The only federal au-

---

**8.** Appellants have offered legion citations to federal case law in support of their claims: *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 178 (3d Cir.1991); *Maguire v. Hughes Aircraft Corp.*, 912 F.2d 67 (3d Cir.1990); *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989); *In re Air Crash Disaster at Mannheim Germany*, 769 F.2d 115, 120 n. 7 (3d Cir.1985); *Lewis v. Lycoming*, 2013 WL 125615, at *4–7 (E.D.Pa. Jan. 10, 2013); *In re West Caribbean Crew Members*, 632 F.Supp.2d 1193, 1202 (S.D.Fla.2009); *O'Donnell v. Club Mediterranee S.A.*, 2008 WL 794975, at *16

(E.D.N.Y. Mar. 24, 2008); *Great Northern Ins. Co. v. Constab Polymer–Chemie GmbH & Co.*, 2007 WL 2891981, at *13 (N.D.N.Y. Sept. 28, 2007); *Gupta v. Austrian Airlines*, 211 F.Supp.2d 1078, 1087 (N.D.Ill.2002); *In re Bridgestone/Firestone, Inc.*, 190 F.Supp.2d 1125, 1139–40 (S.D.Ind.2002); *Simon v. Philip Morris, Inc.*, 124 F.Supp.2d 46, 61 (E.D.N.Y.2000); *Kozoway v. Massey–Ferguson, Inc.*, 722 F.Supp. 641, 644 (D.Colo. 1989); and *Carlenstolpe v. Merck & Co.*, 638 F.Supp. 901, 908–09 (S.D.N.Y.1986).

thority relied upon by the panel of this Court that decided *Aerospace* was the United States Supreme Court's landmark decision in *Reyno*. *Aerospace*, 696 A.2d at 813 ("Due to this Commonwealth's dearth of forum transfer cases in an international context, we are guided by our United States Supreme Court's landmark decision, [*Reyno* ]."). Appellants suggest that this reliance upon *Reyno* evinces a general scheme of deference to federal law in Pennsylvania's approach to international questions of *forum non conveniens*. To the contrary, *Aerospace* clearly states as follows regarding this Court's review: "Due to the fact that the doctrine of *forum non conveniens* is based upon a common law notion, **we will remain consistent in employing the standard used by our state courts** with regard to inter/intrastate dismissal for forum challenges in the context of this international setting." 696 A.2d at 813 (emphasis added).

Our holding in *Aerospace* confounds the Appellants' recommended approach: The mere fact that an issue implicating *forum non conveniens* involves an international jurisdiction does **not** substantively alter our analysis, nor does it compel us to abandon state law in favor of federal precedent.[9] This is not a situation in which Pennsylvania law is wholly silent as to an issue of federal law, a circumstance which would compel us to look to our federal counterparts for guidance. *Werner, su-*

*pra.* This case implicates Pennsylvania's interstate *forum non conveniens* statute, *see* 42 Pa.C.S. § 5322(e), which calls for the application of Pennsylvania's current interstate *forum non conveniens* paradigm. These aspects of Pennsylvania law are well-established, even in the international context. *See Aerospace, Plum supra.* Consequently, for all of the reasons stated, we discern no need to turn for persuasive authority to federal precedent in this case. Pennsylvania's approach is clear and well-defined.

With the foregoing legal principles in mind, we turn to the issues raised by Appellants. We begin by addressing Appellants' second claim. Because we conclude that Appellants' second claim is dispositive, we do not address Appellants' first claim. In relevant part, Appellants argue that the trial court improperly weighed the private and public factors from *Gilbert* by comparing the fora of Portugal and Pennsylvania, instead of focusing its analysis upon the United States as a whole. Appellants' Brief at 38. Essentially, Appellants argue that, if the trial court had examined the private and public factors of *Gilbert* in the context of the United States, and not merely Pennsylvania, it would have reached a different conclusion:

> [T]he lower court erred by improperly weighing the public and private factors as they related to Pennsylvania rather

9. Appellants also misapprehend the import of the quotation that Pennsylvania's approach to questions of *forum non conveniens* is "identical" to federal law. *See* Appellants' Reply Brief at 4–5. The United States Supreme Court noted that "Pennsylvania and California law on *forum non conveniens* dismissals are virtually identical to federal law." *Reyno,* 454 U.S. at 249 n. 13, 102 S.Ct. 252 (citing *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 158 (3d Cir.1980)). Assuming that this statement is not mere *dicta,* the decision in *Reyno* was

issued over fifteen years **before** this Court issued its holding in *Aerospace.* Appellants' contention that the Pennsylvania and federal approaches to *forum non conveniens* dismissals are identical would only be correct if Pennsylvania law had remained static during the intervening years. As our discussion of our relative standards of review in this context reveals, that is simply not the case. *See supra* at 1049–51. We discern nothing that would bind Pennsylvania courts to these various federal approaches which have evolved in the decades **after** the holding in *Reyno.*

than the United States as a whole: "After considering the private and public factors in litigating in **Pennsylvania versus Portugal,** it is clear that Portugal is the appropriate place to conduct this litigation." [T.C.O. at 9.] However, the appropriate focus is on the location of documents and witnesses in, and on other connections to, the **United States**—*not* Pennsylvania. *Aerospace,* 696 A.2d at 815 (recounting "significant connections" to the "**American** forum" and finding "**American** interest in this case is sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.") (emphasis added)... With this legally improper focus, the lower court found that dismissal was appropriate based on the fact that "Pennsylvania has only a tangential relation to the facts of this case and it would be improper to burden a Pennsylvania jury with a case in which the community holds virtually no interest." That was a clear misapplication of the law.

Appellants' Brief at 37–38 (citations modified; emphasis in original).

In arguing that the trial court should have considered this case's contacts with the United States, and not simply Pennsylvania, Appellants refer to the party defendants, pieces of evidence, testimonial witnesses, and other factors that establish this case's contacts with the United States in general. Appellants' reply brief in this case offers the most apt summation of the evidence offered in support of their claim:

The lower court plainly erred by disregarding the substantial ties between this litigation and the United States as a whole—not just Philadelphia or Pennsylvania, including:

- Dimeling's witnesses and documents regarding the decision to make and sell [the aircraft] are in Philadelphia. [Appellants' Brief at 41, 43.]

- Every witness of the party[-]defendants is in the United States. *Id.* at 43.

- All design, manufacturing and testing evidence is in the United States. This includes witnesses (party and non-party) and documents. *Id.* at 40–41, 43.

- All documents and witnesses regarding the first two owners of [the aircraft] are in the United States, as [is] all evidence related to its use and maintenance during its first two years in operation. *Id.* at 40–41.

- All FAA and NTSB witnesses and documents concerning similar crashes are in the United States. *Id.* at 41.

- Over 90 specifically identified third-party witnesses of similar accidents are in the United States, including at least one survivor of such an accident, Sherman Hall. *Id.* at 44–45.

- Compulsory process will be available in the United States with respect to all of the foregoing evidence not in the possession of parties in this case. *Id.* at 47–49.

- There will be no need to translate any of the above evidence, including the hundreds of thousands of documents related to design and manufacture if the trial is held in Philadelphia. *Id.* at 49–50.

Appellants' Reply Brief at 11–12.

In *Aerospace,* a panel of this Court was called upon to assess an issue of *forum non conveniens* that arose following numerous failed attempts to repair a Jetstar airplane ("Jetstar"). The plaintiff was Aerospace Finance Leasing, Inc. ("Aerospace"), the Delaware corporation that owned the airplane, and the defendant was

the New Hampshire Insurance Company ("New Hampshire"), a Pennsylvania corporation that issued the insurance policy on the plane. Aerospace's aircraft was registered in the United States, but was damaged while landing in England. Attempts to repair the craft, which were authorized by New Hampshire, failed to make it "airworthy." Aerospace filed claims alleging various theories of relief, and New Hampshire moved to dismiss the case pursuant to *forum non conveniens*. The trial court denied New Hampshire's petition, and New Hampshire appealed. The appeal required this Court to compare the appropriateness of Pennsylvania and England as potential forums. *Aerospace*, 696 A.2d at 811–12.

■ As argued by Appellants, *Aerospace* confirms that, in the context of an **international** *forum non conveniens* case, Pennsylvania courts should consider the connections that a case has with the United States, as well as those factors relating specifically to Pennsylvania. *Id.* at 815 (evaluating general connections with the United States, after evaluating specific connections with Pennsylvania). In *Aerospace,* we found it relevant that

(1) the Jetstar was and has been at all times registered in the United States, *cf.* [*Reyno* ], *supra* (American-manufactured aircraft was registered in Great Britain); (2) the Jetstar was owned by Aerospace, an American (Delaware) corporation, *cf.* [*Reyno* ], *supra* (aircraft was owned, operated and maintained by organizations located in the United Kingdom); (3) the plane was piloted by two FAA-licensed United States citizens; (4) prior owners, operators, and maintenance persons of the aircraft are located in the United States; and (5) the records concerning the design, manufacturer, and testing of the Jetstar are located in the United States.

*Id.* Although these factors did not connect Pennsylvania directly to the controversy, we held that they established a general connection with the United States. These broader connections, combined with the Pennsylvania—specific considerations, weighed in favor of permitting the plaintiffs to pursue their case in a Pennsylvania court. *Id.* at 815–16.

In *Reyno,* the United States Supreme Court also considered *forum non conveniens* factors relating to the United States at large, and not just those that connected the case to the California forum sought by the plaintiffs. 454 U.S. at 257–58, 102 S.Ct. 252 (considering arguments that the "records concerning the design, manufacture, and testing of the propeller and plane are located in the United States" and that "American citizens have an interest in ensuring that American manufacturers are deterred from producing defective products"). Although the *Reyno* Court ultimately concluded that these connections to the United States failed to establish the primacy of the appellant's choice of forum, the Court nonetheless considered the factors in rendering its decision.

■ In the instant case, the trial court limited its discussion to those *forum non conveniens* factors that were specific to Pennsylvania, and did not address the network of connections to the United States as a whole. In pertinent part, the trial court's analysis reads as follows:

After considering the private and public factors in litigating in **Pennsylvania versus Portugal,** it is clear that Portugal is the appropriate place to conduct this litigation. An analysis of the private factors reveals the following. Neither the aircraft nor any of its component parts were designed or manufactured in **Pennsylvania.** The aircraft was permanently operating in Portugal at the time of the crash.

Any non-party witnesses and those responsible for the maintenance of the aircraft, as well as maintenance records, are located in Portugal. Those responsible for conducting testing of the wreckage as part of the GPIAA investigation are located in Portugal. Neither the plaintiffs, nor their parents or successors, were citizens of Portugal or the United States and are not now citizens of either. The plane broke up in-flight and crashed in a field near Castro Verde, Portugal.

Whether the cause of the crash is the result of a defectively designed product, as [Appellants] contend, or poor maintenance in Portugal, as the [Appellees] contend, is a fact question which does not impact the consideration of the private factors here. Further, that the [Appellants] have chosen to retain an attorney whose practice is located in their chosen forum is not a factor in the *forum non conveniens* analysis. *Cinousis* [406 Pa.Super. 500], 594 A.2d 731, 733 (Pa.Super.1991).

The public factors also weigh heavily in favor of litigating this case in Portugal. **Pennsylvania** bears only a tangential relation to the facts of this case and it would be improper to burden a **Pennsylvania** jury with a case in which the community holds virtually no interest. Trial in **Pennsylvania** would require the court to engage in a conflict of laws analysis and likely apply Portuguese law to the case, a factor weighing heavily in favor of dismissal. *Tyro Industries v. James A. Wood, Inc.* [418 Pa.Super. 296], 614 A.2d 279, 282 (Pa.Super.1992). Additionally, the inability of the [Appellees] to obtain proper service on CAE and AAE and to join them as additional defendants in **Pennsylvania** weighs very heavily in favor of dismissal.

\*       \*       \*

[Appellees] intend to argue that the cause of the crash was improper maintenance of the aircraft on the part of AAE and/or CAE and not a design defect in the aircraft. [Appellees] are unable to obtain proper service on either AAE or CAE in Pennsylvania. [Appellees'] case will be severely inhibited by their inability to join AAE and CAE in **Pennsylvania**. This weighs very heavily in finding that Portugal, where service may be made upon AAE and CAE, is a more appropriate and convenient forum.

In the event that the [Appellees] are found liable in [**Pennsylvania,**] they would likely be forced to initiate duplicative contribution and indemnity actions against AAE and CAE in Portugal. This would result in the otherwise unnecessary burden of litigating the same issues in two separate trials under two separate legal systems. This strongly demonstrates that Portugal is a more appropriate and convenient forum in which to litigate all of the issues in the case in one trial.

T.C.O. at 9–12 (internal citations modified).

The only reference to factors that do (or do not) connect this case to the United States, as such, is the trial court's passing observation that Appellants are not United States citizens. Furthermore, the trial court did not discuss any of the *Gilbert* factors that weigh **in favor** of Appellants' choice of forum in its opinion. Rather, the discussion focused purely upon Pennsylvania factors that weigh **against** Appellants' choice of forum. This Court has reversed the *forum non conveniens* ruling of a trial court upon the basis of such one-sided discussion. *See Wright v. Aventis Pasteur, Inc.,* 905 A.2d 544, 550 (Pa.Super.2006) (noting that "[t]he trial judge, . . . did not discuss the arguments presented by appellants, but focused primarily on the parties' lack of ties to [Pennsylva-

nia].").  Specifically, the failure fully to consider and discuss the factors weighing both against, and in favor of, an appellant's choice of forum formed the basis for this Court's conclusion that the trial court had abused its discretion.  *Id.* at 552 (concluding that the appellees had not demonstrated sufficiently weighty reasons to overcome appellant's choice of forum, due to "other factors present here, which, ... were not considered by the trial judge").

Instantly, the trial court substantively has engaged in the same kind of one-sided analysis that we disapproved of in *Wright.* In limiting its discussion to factors favoring dismissal, the trial court appears to have disregarded several factors that favor Appellants' choice of forum.  Pursuant to *Gilbert,* the following private factors support Appellants' choice of forum: (1) evidence relating to the design, manufacture and testing of the aircraft is located in the United States, *see Aerospace,* 696 A.2d at 815 (considering the location of "the records concerning the design, manufacturer, and testing"); (2) all of the witnesses regarding Appellants' claims of design defect and products liability are located in the United States; *cf. Reyno,* 454 U.S. at 257, 102 S.Ct. 252 (weighing the fact that "many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview"); (3) evidence relating to the aircraft's two previous American owners, and documentation of maintenance and upkeep of the aircraft during that time period, are located in the United States, *see Aerospace,* 696 A.2d at 815 (considering the location of "prior owners, operators, and maintenance persons of the aircraft"); (4) two of the remaining defendant-corporations (Dimeling and American Capital) are registered

Pennsylvania corporations; (5) two of the remaining defendant corporations maintain principal places of business in Pennsylvania (Allegheny Technologies, Inc., and Allegheny Teledyne, Inc.); and (6) three of the remaining defendant-corporations maintain registered agents in Pennsylvania (Continental, Teledyne Technologies, Inc., and Honeywell); [10] and (7) the general American "interest in ensuring that American manufacturers are deterred from producing defective products."  *See Reyno,* 454 U.S. at 260, 102 S.Ct. 252.

We also find support for Appellants' choice of forum in *Gilbert*'s public factors. In this case, none of the decedents/pilots, plaintiffs, defendants or parties-in-interest are Portuguese.  By way of contrast, in *Reyno,* "[t]he pilot and all of the decedents' heirs and next of kin were Scottish subjects and citizens."  454 U.S. at 235, 102 S.Ct. 252.  Additionally, the trial court here did not discuss the general interest that the United States has "in ensuring that American manufacturers are deterred from producing defective products," which was a factor considered by the *Reyno* Court.  *Id.* at 260, 102 S.Ct. 252.

Due to the absence of a complete trial court discussion of the *Gilbert* factors weighing in favor of Appellants' choice of forum, it is not possible for us to assess the probity of the trial court's analysis. On its face, the trial court's opinion suggests that this case has only a "tangential relation" to Pennsylvania.  T.C.O. at 10. However, as our discussion above indicates, the factors in this case are more balanced than the trial court allows, with both Appellants and Appellees presenting substantial arguments with regard to their respective positions.  Specifically, it appears that most of the evidence related to

---

**10.**  The locations of corporate offices and registered agents have been considered by Pennsylvania courts in assessing *forum non conve-*

*niens* claims, specifically with reference to the ease of obtaining process on potential witnesses.  *See Wright,* 905 A.2d at 549.

Appellants' claims is located in the United States, while most of the evidence supporting Appellees' claims is located in Portugal. However, we have no way of knowing whether and to what extent the trial court considered those factors that favored Appellants' choice of forum. Any such analysis is wholly absent from the trial court's discussion.

This Court's holding in *Wright* indicates that the failure of the trial court fully to evaluate the private and public *forum non conveniens* factors may serve as the basis for reversal:

> [T]here are other factors present here, which, while discussed by both parties on appeal, were not considered by the trial judge.... Since the law demands that the plaintiff's choice of forum is entitled to great weight, we conclude that the trial court abused its discretion in determining that sufficient "weighty reasons" existed to justify dismissal of appellants' complaint based on *forum non conveniens.*

*Wright*, 905 A.2d at 552. In *Plum*, the Pennsylvania Supreme Court held that "[p]roper application of the doctrine of *[f]orum [n]on [c]onveniens* necessitates that the court below ... exercise its discretion after considering **all** the factors." *Plum*, 160 A.2d at 554 (emphasis added); *see Wright*, 905 A.2d at 552(" "). While foreign plaintiffs enjoy "less deference" with regard to their choice of forum, *see Reyno*, 454 U.S. at 256, 102 S.Ct. 252 their choice is still entitled to solicitude. *Cf. Aerospace*, 696 A.2d at 814–16. *Wright* indicates that a one-sided trial court discussion of *forum non conveniens* factors calls for reversal. Additionally, the Su-

preme Court of Pennsylvania has held that a trial court fails to **exercise** its discretion when it does not conduct a full and thorough analysis of the *forum non conveniens* factors. *See Plum*, 160 A.2d at 554 ("Proper application of the doctrine of *[forum non conveniens* ] necessitates that the court below make a finding as to the availability of other forums and then **exercise its discretion by considering all the factors.**").

Based upon the foregoing discussion, we are constrained to conclude that the learned trial court abused its discretion by failing fully to discuss the *forum non conveniens* factors in this case. *Plum, Wright, supra.* Specifically, our settled precedent regarding international questions of *forum non conveniens* confirms that factors which connect the case generally to the United States, and not merely to Pennsylvania, are necessary considerations. *Aerospace, supra.* Accordingly, we vacate the trial court's order, and we remand for the trial court to conduct a complete and thorough analysis of **all** relevant *forum non conveniens* factors in this case.[11]

Order vacated. Case remanded for further action consistent with this opinion. Jurisdiction relinquished.

---

11. We make no comment regarding the outcome of the trial court's reconsideration. We are mindful of settled precedent from the United States Supreme Court stating that "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable." *Reyno*, 454 U.S. at 263, 102 S.Ct. 252.