J-A23040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DELMAR O. ULSH AND CRYSTAL ULSH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MARLIN TROY ULSH AND STUART LEE ULSH | : | No. 1515 MDA 2021 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered October 14, 2021
In the Court of Common Pleas of Fulton County Civil Division at No(s):
2018-00299

BEFORE:   BOWES, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:   **FILED: JANUARY 20, 2023**

Appellants, Marlin Troy Ulsh and Stuart Lee Ulsh, file this interlocutory appeal by right from the portion of the October 14, 2021, order entered by the Court of Common Pleas of Fulton County that determined the parties' respective shares in a family partnership, granted the Plaintiffs/Appellees' request to dissolve the partnership, and ordered the partition of the partnership asset known as the "Front Farm" real estate accordingly.  We affirm the order in these respects and remand to the trial court to resume further proceedings consistent with this decision.

_____

[*] Former Justice specially assigned to the Superior Court.

The present matter arises from a Complaint filed by Plaintiffs/Appellees Delmar and Crystal Ulsh on December 19, 2018, in which they alleged that the "Ulsh Farm Partnership", whose business it is to run the Ulsh Family Farm, comprised four equal partners—adult siblings Delmar, Crystal, Marlin, and Stuart. The Complaint further alleged that the Ulsh Family Farm itself consisted of various personal property and two farm properties on which the Partnership's farming takes place, the "Front Farm" and the "Rear Farm."

Delmar and Crystal's Complaint sought dissociation from and dissolution of the Partnership,[1] partition of the "Front Farm" among the four owner-siblings equally, and partition of the "Rear Farm" between co-owners Delmar and Stuart.[2] With respect to the first of the farm properties, the "Front Farm", which is the main working farm on the property, the Complaint alleged that it was owned equally by the four siblings despite Crystal's conveyance of her share by Deed to Stuart and Delmar at Stuart's insistence to shield the

_____

[1] Once one dissociates from a partnership, one has no standing to seek dissolution of the partnership, as only an existing partner may dissolve a partnership. *See* Official Comment to 15 Pa.C.S. 8481(a)(1) (a partner who has already been dissociated lacks the power to dissolve the partnership.)

Here, the trial court perceived that Plaintiffs/Appellees Delmar and Crystal sought primarily to dissolve the Partnership in question, and it granted that request. Accordingly, the trial court declared the dissociation request moot.

[2] The Complaint provides, however, "that if the property cannot be divided without prejudice to or spoiling the whole, such proper and necessary sale or sales of the same may be made by such person(s) and in such manner as the Court may direct. Complaint ¶ 37 B.

property from her then-pending divorce and equitable distribution matter.[3, 4] The second of the farm properties, the "Rear Farm", accessible only by a 25-foot wide right of way across the Front Farm, is owned equally by Delmar and Marlin as tenants-in-common.

Defendants/Appellants Stuart and Marlin filed their Answer and New Matter and Counterclaims seeking dissociation of Delmar from the Partnership and partition of the Rear Farm and asserting against Delmar and Crystal both

---

[3] The parties acknowledged during the present litigation that they initially misapprehended the applicable law regarding Crystal's share in the partnership, as it was not subject to equitable distribution because it was a gift from their father.

[4] Upon Crystal's 2009 conveyance, therefore, the Front Farm was owned equally by Delmar, Marlin, and Stuart as joint tenants. Notably, the brothers had not prorated Crystal's 1/3 share amongst themselves in accordance with their preexisting 1/6, 1/3, and 1/6 shares but had chosen, instead, to become equal partners.

Delmar and Crystal's Complaint alleged that the parties intended the conveyance to be a temporary measure, as reflected by the facts that no consideration for the conveyance of Crystal's share was paid and Crystal continued to work the Front Farm in the ensuing years to the Partnership's benefit. Complaint, ¶ 23. The Complaint thus averred that "all parties have agreed that Crystal Ulsh is [sic] also holds an equal one-fourth share in the Partnership[,]" Complaint, ¶ 13, and it further avers that Crystal has been working on the farm and received a partial distribution of the farm income in 2017 (the year prior to the Complaint); is not paid a salary for her farm work but performs the work as an equal member of the Partnership; has reasonably relied on the representations of Marlin and Stuart that she would continue to be treated as an equal partner; and that the Partnership has received the benefit of Crystal's work for years, with the understanding that she was entitled to the full benefits of Partnership. Complaint, at ¶¶ 14-17.

a conversion claim with respect to Partnership assets and a breach of fiduciary duty claim for alleged mismanagement of such assets.

The matter proceeded first to an evidentiary hearing on January 29, 2020. The trial court determined afterward, in its Opinion of February 13, 2020, that Crystal was a partner in the Ulsh Farm Partnership, finding that the evidence belied Defendants'/Appellants' claim that she intended to dissociate from the partnership and thereby permanently surrender her partnership interest with her conveyance. Instead, the temporary transfer of title was in the nature of a constructive trust in her favor, the trial court ruled, as she trusted the representations of her siblings that title would be returned to her in the future.

The trial court thus ordered that Crystal possessed an equal, one-quarter interest in the Partnership with her siblings despite title as indicated on the deed, and, therefore, that she would share equally with her three sibling Partners the value of the Front Farm—which was deemed a partnership asset-upon dissolution of the partnership. Trial Court Opinion, 2/11/20, at 3-4.

On June 22, 2021, the present matter proceeded to a non-jury trial on the remaining issues, which included formal partition of the Front Farm, partition of the Rear Farm, dissociation from the Partnership, dissolution from the Partnership, and Marlin's and Stuart's counterclaims. At trial, the parties agreed the Partnership's purpose was to conduct the business of farming on the Front Farm. N.T., 6/22/21, at 6. Marlin and Stuart testified that they

have not assisted with the farming operations for at least five years, N.T. at 77, 115, and all parties agreed that they can no longer remain in business together. N.T. at 7, 33, 58, 84, 137, 141. In this regard, the parties have been unable to work together and have disagreed on many things related to the Partnership.

Appellants testified, however, that they had the financial wherewithal to hire a third party to help with the farming if necessary, and had done so in the past, N.T. at 35-36, 101-102, 141-42, and they wished to continue the Partnership operations only with one another. N.T. at 84, 141-42. Appellees countered by reference to Marlin's testimony that he lives almost 150 miles away from the farm and is a long-distance truck driver, and Stuart's testimony that he runs a business, farms on his personal property, and is a local commissioner, leaving little time to tend to the Front Farm. N.T. at 18-19, 115.

As a result, Plaintiffs/Appellees Delmar and Crystal testified that since 2014 or 2015 they have been forced to perform all the work on the farm—which takes anywhere from 35 to 40 hours per week during the "busiest weeks" of the year and from 10-15 hours per week during the "slowest weeks" of the year—and have used the income earned from commercial sale of the crops primarily to pay for the property taxes and insurance. N.T. at 6-7, 52-53, 115. Citing this hardship, they testified that they no longer wished to share in the remaining profits with two non-participating partners, so they

brought the present action and leased the Front Farm to a third party for the past few years pending resolution of this litigation.  N.T. at 7, 17.

Testimony further established that in 2020, Defendants/Appellants Marlin and Stuart demanded that the tenant pay each party an equal one-fourth share of the rent rather than pay the rent to the Partnership bank account.  When they presented this demand to the tenant, the tenant withdrew from the lease for fear that Marlin or Stuart would destroy his crops. N.T. at 132.

Delmar and Crystal testified that they wished the Front Farm to be partitioned equally among the four partners so that they could continue farming and keep their own profits.  Stuart and Marlin testified that they would prefer to buy out Delmar's and Crystal's share of the farm, though it was unclear whether they intended to farm it, lease it, or sell it.

By the trial court's Order of October 6, 2021 (filed on October 14, 2021), the trial court dissolved the parties' Partnership and declared, *inter alia*, that the Front Farm, as a Partnership asset owned equally by the Partners, shall be subject to a "winding up" conference regarding the manner by which Partnership assets would be sold, divided, or managed.  With this order, therefore, the trial court effectively granted Delmar and Crystal's request for equal partition of the Front Farm among the four partners.

Marlin and Stuart filed post-trial motions, but before the trial court addressed the motions, they filed the instant appeal under Pa.R.A.P.

311(a)(7), *infra*. The trial court more specifically summarizes this aspect of

the procedural history:

> Following trial, [the trial court] entered [its Order of October 6, 2021 (docketed on October 14, 2021)] that is the subject of the current appeal. The Order granted the partition of the "Rear Farm" and set forth the names of all co-tenants and the extent of their interest in the property (Pa.R.Civ.P. 1557).
>
> ---
>
> > Fn. The [trial court] recognizes that such an order is subject to immediate interlocutory appeal under Pa.R.Civ.P. 311(a)(7). ***See Kapcsos v. Benshoff***, 194 A.3d 139, 142 (Pa. Super. 2018). Nevertheless, in their Concise Statement of Errors Complained of on Appeal, Appellants do not challenge [the trial court's] Order of partition of the "Rear Farm." Indeed, the Order of partition grants relief requested in Count IV of Appellants' Answer with New Matter and Counterclaim. As such, [the trial court's] unchallenged partition Order is not a basis to trigger appellate review of the remaining interlocutory issues.
>
> ---
>
> Additionally, a preliminary conference was scheduled pursuant to Pa.R.Civ.P. 1558(a)(1), (3), and (b) to determine whether the parties could agree upon "a plan of partition or sale" and to consider whether the partition process should be referred to a master. In addition, the challenged Order granted dissolution of the partnership pursuant to 15 Pa.C.S.A. § 8481(a)(1) and (a)(4)(iii) and scheduled a conference to discuss the winding up of the partnership business, including the manner of sale of the partnership's personal property and real property and identification of outstanding obligations and liabilities. The Order further dismissed the dissociation action as moot and entered judgment on the various actions raised by Appellants in their Answer and New Matter and Counterclaim.
>
> On October 25, 2021, Appellants timely filed Post-Trial Motions challenging a number of the [trial court's] findings.[ ] By Order dated October 29, 2021, [the trial court] continued the previously

scheduled conferences and set a briefing schedule to address Appellants' Post-Trial Motions.

On November 10, 2021, Appellants filed the current Notice of Appeal, thereby depriving [the trial court] of further jurisdiction. Pa.R.A.P. 1701(a); ***Thomas v. Elash***, 781 A.2d 170, 175 (Pa. Super. 2001) (trial court lacks jurisdiction to consider post-trial motions following filing of appeal).

Trial Court Opinion, 1/25/22, at 2-3.

Appellants present the following issues for our consideration:

1. Did the [trial court] err when it granted dissolution of the Ulsh Farms Partnership (the "Partnership") where Plaintiffs failed to establish grounds for dissociation of the Partnership, it is reasonably practicable to carry on the Partnership as a prosperous business, certain assets of the Partnership are restricted from sale making dissolution impracticable, and where the Plaintiffs did not establish more than mere disagreement between Plaintiffs and Defendants as to the Partnership business?

2. Did the [trial court] err in determining the ownership and value of Partnership assets where it disregarded jointly submitted evidence regarding ownership, failed to rule upon disputed items, failed to assign any value to certain undisputed Partnership assets (including real estate and personality [sic]), and improperly allowed valuation testimony from an admittedly unqualified appraiser?

3. Did the [trial court] err when it reassigned the Partnership interests of the Parties in contravention of the Parties' agreements?

Brief of Appellants, at 4.

Initially, we deem the trial court's order filed on October 14, 2021, an immediately appealable order pursuant to Pa.R.A.P. 311(a)(7), [5] as it explicitly ordered partition of the Rear Farm and necessarily granted Plaintiffs/Appellants Delmar's and Crystal's request for partition of the Front Farm by ordering dissolution of the Partnership, affirming that the Front Farm is owned equally by the four Partners, and directing that a conference take place where the parties wind up Partnership business regarding, *inter alia*, the Partnership's real property consisting of the Front Farm.

In *Friday v. McShane*, 268 A.3d 425 (Pa. Super. Ct. 2021) (unpublished memorandum),[6] this Court acknowledged the immediate appealability of a such an order:

_____

[5] Rule 311. Interlocutory Appeals as of Right, provides, in relevant part:

   (a)   **General rule.**--An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

   . . .

   (7) *Partition.*--An order directing partition.

. . . .

Pa.R.A.P. 311(a)(7).

[6] While *Friday* is not controlling because it is a non-published memorandum, it nevertheless provides persuasive authority to this Court as it was filed after May 1, 2019. **See** Pa.R.A.P. 126(b) (providing that unpublished nonprecedential memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Pennsylvania Rules of Civil Procedure 1551-1574 split a partition action into two, distinct, chronological parts. Rules 1551-1557 govern Part [I], and Rules 1558-1574 govern Part [II]. Each part, by rule, must produce its own, distinct, appealable order.

The first order, under [Rule] 1557, directs partition of the parties' legal interests into severalty. *See Johnson v. Gaul*, [ ] 77 A. 399, 400 ([Pa.] 1910) ([stating that,] "partition is a possessory action; its purpose and effect being to give to each of a number of joint owners his or her share in severalty").

The second order, under [Rule] 1570, does one of three things. A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties.

In Part [I], the [trial] court must determine whether the property is partitionable under law. In other words, Part [I] is to ascertain:

> [1.] Do the parties jointly own the real estate in question?
>
> [2.] If so, what fractional legal interests in the property does each party hold?

The answers to these questions may be admitted in the pleadings, or, if they are not, a hearing or jury trial may be needed. If the trial court answers both questions and finds that the plaintiff has established a right to partition, Rule 1557 dictates:

> the [trial] court shall enter an order directing partition which shall set forth the names of all the co-tenants and the nature and extent of their interests in the property. No exceptions may be filed to an order directing partition.

- 10 -

[Pa.R.Civ.P. 1557.] **Critically, any party may immediately appeal that order under Pennsylvania Rule of Appellate Procedure 311(a)(7) (permitting some interlocutory appeals as of right)**. After a Part [I] order of partition becomes final (either because no [party] appeals or an appellate court affirms it), only then may parties proceed to Part [II], where the actual division, award, or sale of the partitioned property occurs.

*Kapcsos*, 194 A.3d at 141-142 (ellipsis and original brackets omitted). "Part [II] is purely an equitable proceeding where the trial [court] balances the equities to decide what form the partitioning will take. If the property were a pie, the trial court must decide how best to serve it to the parties." *Id.* at 142-143.

*Friday*, 268 A.3d 425 at *4 (Pa. Super. Ct. 2021) (emphasis added).

Here, the trial court's Order filed on October 14, 2021, marked the end of the Part I phase described in *Friday*, as it declared that the Front Farm was a Partnership asset, the Partners each owned a 25 percent Partnership interest in the Front Farm, and the Partnership was dissolved so as to require a Part II, winding up conference to determine the manner of division or sale of the property. Accordingly, the trial court's order in this respect was immediately appealable under Rule 311(a)(7).

In Defendants/Appellants Marlin and Stuart's first issue, they contest the trial court's order of dissolution, as they maintain Delmar and Crystal failed to carry their burden to establish that dissolving the Partnership and, in turn, the consequential partitioning of the Front Farm was appropriate. Without a

- 11 -

governing partnership agreement to the contrary,[7] the trial court reviewed the evidence and awarded dissolution in light of Sections 8481(a)(1) and 8481(a)(4)(iii) of Pennsylvania's Uniform Partnership Act. Marlin and Stuart argue, however, that neither Section 8481(a)(1) nor Section 8481(a)(4)(iii) are applicable under the facts of the case. We disagree.

Pursuant to the Act's Section 8481(a)(1), a partnership at will is dissolved when "the partnership knows or has notice of a person's express will to withdraw as a partner." 15 Pa.C.S. § 8481(a)(1).[8] Even where a partnership agreement exists, an at-will dissolution does not violate the agreement "[w]here no definite term or particular undertaking is specified in the partnership agreement[.]" *Stainton v. Tarantino*, 637 F. Supp. 1051 (E.D. Pa. 1986) (applying Pennsylvania law; decided under former

---

[7] *See* N.T., 1/29/20, at 17.

[8] **§ 8481. Events causing dissolution**

**(a) General rule.--**A partnership is dissolved, and its business shall be wound up, upon the occurrence of any of the following:

(1) In a partnership at will, the partnership knows or has notice of a person's express will to withdraw as a partner, other than a partner that has dissociated under section 8461(2), (3), (4), (5), (6), (7), (8), (9) or (10) (relating to events causing dissociation), except that, if the person has specified a withdrawal date later than the date the partnership knew or had notice, on the later date.

15 Pa.C.S. § 8481.

law); ***Girard Bank v. Haley***, 332 A.2d 443 (Pa. 1975) (decided under former law); ***Canter's Pharmacy, Inc. v. Elizabeth Associates***, 578 A.2d 1326 (Pa. Super. 1990) (decided under former law). ***See also*** 13 Summ. Pa. Jur. 2d Business Relationships § 17:38 (2d ed.) (noting, "A partnership is dissolved, and its business must be wound up, in a partnership at will, if the partnership knows or has notice of a person's express will to withdraw as a partner, [barring an exception inapplicable to the present case].") (collecting cases).

This provision recognizes the power of any partner in a partnership at will to dissolve the partnership at any time "by express will." Official Comment to 18 Pa.C.S. § 8481(a)(1). Partners cannot be coerced into remaining in a partnership against their wishes, and a partner has the power to terminate the relationship the partner has with the partners, which is an agency relationship, even if terminating the relationship breaks a contract. ***Girard Bank***, ***supra***.

Here, Appellants Marlin and Stuart argue that Crystal, for example, failed to satisfy the notice element of Section 8481, and they suggest that her testimony at the January 29, 2020, evidentiary hearing supports their claim. Specifically, in their appellate brief, they rely solely on the following excerpt from Crystal's testimony during her direct examination:

> **Counsel for Delmar and Crystal:** Did you ever send a formal notice that you wanted to withdraw from the partnership?
>
> **Crystal:** No.

N.T., 1/29/20, at 32.

Offered in isolation, the excerpt is, at best, misleading, as the reader is not given the context in which the testimony was offered. The larger excerpt below clarifies that Crystal was referring not to the present matter regarding Delmar's and her Complaint to dissolve the Partnership but, instead, to the separate issue of whether she had intended to retain a Partnership interest in the Ulsh Farms when she had voluntarily and temporarily conveyed her Partnership share to her siblings with the understanding that she was not permanently relinquishing her partnership interest.

> **Counsel:** Just to be clear, did they pay you anything for your share?
>
> **Crystal:** No . . . .
>
> **Q:** When did Stuart first tell you that he wasn't going to voluntarily put you back on the deed?
>
> **A:** I discovered this back in -- I discovered that whenever – like 2016, '17 when I read the papers from this ongoing process, what we're going through right now.
>
> **Q:** Would you have ever singed the deed over to Stuart and Delmar if you had known that Stuart would refuse to put you back on?
>
> **A:** No, I would not have, no.
>
> **Q:** When was the first time that either Stuart or [Marlin] told you that they don't consider you to be a partner in the partnership?
>
> **A:** I never heard that from anyone, no.
>
> **Q:** You're aware they contend that now though?
>
> **A:** Yes. I'm aware of that now.

**Q:**     Were you ever a part of a vote to have yourself removed as a partner from the partnership?

**A:**     No, I was never removed never with any votes.

**Q:**     Did you ever send a formal notice that you wanted to withdraw from the partnership?

**A:**     No.

N.T., 1/29/20, at 31-32.

Viewed in context, therefore, Crystal's testimony cited by Appellants is irrelevant to the present question of whether she and Delmar gave statutory notice of their express will to withdraw as Partners. By the unambiguous language of Section 8481(a)(1), the filing and service of their Complaint in dissolution supplied sufficient notice. **See also Tarantino**, 637 F. Supp. at 1056 (filing of complaint in dissolution is sufficient notice).[9] On this ground, alone, the trial court's order granting Delmar's and Crystal's request to dissolve the Partnership was proper.

In Defendants/Appellants Marlin and Stuart's second issue, they argue that the trial court erroneously disregarded "jointly submitted evidence" regarding ownership and otherwise engaged in improper valuation methods in valuing certain Partnership assets, including the valuation of the farms. In response, the trial court observes that the valuation issues raised in the present interlocutory appeal had been raised first in their post-trial motions

---

[9] Although not binding on us, we may cite federal authority for its persuasive value. **Bochetto v. Piper Aircraft Co.**, 94 A.3d 1044, 1050 (Pa. Super. 2014).

and were slated for trial court review pending completion of court-ordered briefs. In this regard, the trial court opines:

> Importantly, the prematurity of the current appeal has precluded the efficient conclusion of this litigation. At least one issue raised in the Post-Trial Motion, and subsequently on appeal, challenges [the trial court's] lack of ruling on requests for relief not apparent in the pleadings [referencing, *e.g.*, items of Partnership personal property that were not mentioned in the pleadings]. As the lack of ruling is directly the result of the parties' failure to properly identify the issue before the Court, the first opportunity to fully address the issue presented itself in post-trial motions. Unfortunately, the filing of appeal ended that opportunity. Thus, Appellants have effectively denied [the trial court] the opportunity to correct omissions on salient issues prior to final judgment and thereby avert the need for appellate review.
>
> . . .
>
> [The trial court] has yet to enter an order relating to the disposition of partnership assets to be sold, but Appellants inexplicably claim [the trial court] erred "when ordering that the partnership must be wound up and its assets sold." Paragraph C, Concise Statement of Errors Complained of on Appeal. Similarly, Appellants challenge the entry of an order that they claim requires the sale of the "Front Farm" to third parties in violation of deed restrictions affecting the property. *Id*. No such order exists. Rather, Appellants' . . . appeal has denied [the trial court] the opportunity to consider the impact of deed restrictions on real property owned by the partnership in winding up partnership affairs.
>
> In similar fashion, Appellants challenge [the trial court's] failure to assign any value to the "Front Farm" and [the trial court's] allegedly improper decision to admit the testimony of Appellees' witness regarding the value of the "Front Farm." Once again, however, the [trial court] did not rule on the issue of value or consider the testimony of Appellees' witness concerning the same, as the Order currently subject to appeal sets those issues for discussion and possible resolution at a subsequent conference, which Appellants precluded from occurring by the current appeal. In effect, Appellants currently complain of [the trial court's] failure

- 16 -

to enter findings that their actions prevented [the trial court from making.

. . . .

Trial Court Opinion at 4-6.

After careful review of the record and consideration of the trial court's pertinent observations, we conclude that the matters raised in Appellants' second issue are in the nature of the "Part II" partition inquiry outlined above in ***Friday*** and, therefore, properly and best addressed at the trial court level on remand.

In Marlin's and Stuart's final issue, they assert the trial court erroneously determined that the Partners were equal owners in the Partnership, with each owning a 25% interest in the Front Farm. They maintain that the documentary basis for their assertion—mainly their father's will—established that Delmar and Stuart each owned a 1/6 interest while Marlin and Crystal each owned a 1/3 interest in the Front Farm prior to Crystal's temporary conveyance to Stuart.

After her conveyance, however, tax records showed Marlin, Stuart, and Delmar represented themselves as equal, 1/3 owners in the Partnership. While Marlin and Stuart posit that there was no historical basis for the trial court's finding of fact that the *four* siblings were equal partners, it is apparent from the record that the trial court made this finding, at least in part, by relying on the three-owner Partnership's previous, equities-driven decision to

apply Crystal's tendered share amongst themselves in such a way as to become equal partners rather than to prorate her share to maintain the original model of dominant and lesser partners.[10]

We discern no manifest abuse of discretion, no misapplication of law, or nothing palpably erroneous with respect to the trial court's decision to continue this equitable model upon recognizing Crystal, above Appellants' objections, as an equal partner in the four-owner Partnership. Indeed, it is beyond dispute that Crystal held one of the two larger ownership interests prior to making her sacrificial conveyance out of a sense of duty to the Partnership, and the record otherwise shows her to have been one of the more active contributors to maintaining the Front Farm.

As such, we find inapposite the decisions of **Hess v. Gebhard & Co.**, 808 A.2d 912, 920 (Pa. 2002) (holding where there are no reasonable grounds for the court's decision, the decision will be reversed) and **Viener v Jacobs**, 834 A.2d 546, 554 (Pa. Super. 2003) (holding a decision in equity will be reversed where the trial court was "palpably erroneous, misapplied the law or committed a manifest abuse of discretion.") (internal citations and quotation omitted) relied upon by Appellants to challenge the trial court's exercise of

---

[10] Appellees Delmar and Crystal seek further to undermine Appellant's opposition to the trial court's equal share model with the interesting point that a return to the original 1/6, 1/6, 1/3, 1/3 share model would result in the same 50/50 split between Appellants and Appellees as currently exists and, ostensibly, would offer Appellants no collective benefit. We merely acknowledge this critique without adopting it for our present purposes.

equitable discretion in determining that Stuart, Marlin, Delmar, and Crystal each owns a one quarter interest in the Partnership. Accordingly, this claim affords Defendant/Appellants Marlin and Stuart no relief.

For the foregoing reasons, we affirm the Order entered below to the extent it declares that the four Partners possess equal fractional interests in the Partnership, that the dissolution of the Partnership requires the partition of, *inter alia*, the Partnership asset known as the "Front Farm" real estate, and that said partition shall accord with the Partners' fractional interests.

Order affirmed. Case remanded to the trial court, which shall conduct further for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/20/2023