**AEROSPACE FINANCE LEASING, INC.,**
**a Delaware Corporation, Appellee**

v.

**NEW HAMPSHIRE INSURANCE CO.,**
**a Pennsylvania Corporation,**
**Appellant.**

Superior Court of Pennsylvania.

Argued April 8, 1997.
Filed May 30, 1997.

William Pietragallo, II, Pittsburgh, for appellant.

Robert S. Grigsby, Pittsburgh, for appellee.

Before CIRILLO, President Judge Emeritus, JOHNSON, J., and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus.

New Hampshire Insurance Company appeals from the certified amended order of the Court of Common Pleas of Allegheny County denying appellant's preliminary objections on the basis of *forum non conveniens.* We affirm.

On July 18, 1992, Appellant New Hampshire Insurance Company ("New Hampshire")[1] issued a one-year "Aviation Hull All Risks and Legal Liability" policy[2] to its assured, Appellee Aerospace Financing Leasing, Inc. ("Aerospace"), a Delaware corporation.[3] AIG Europe (UK) Limited, a broker with its business address in England, placed the policy for Aerospace and handled any claims made under the policy. The policy, which was valid worldwide, covered one of Aerospace's aircrafts, a Lockheed Jetstar 731 ("Jetstar"). On November 27, 1992, the Jetstar was damaged while landing at the Southhampton Airport in Hampshire, England.

After the accident, New Hampshire authorized Avco Aviation ("Avco") to repair the damaged aircraft.[4] Months after it was hired, but before completion of the job, Avco liquidated. New Hampshire then employed Osprey Aviation Limited ("Osprey") to complete the repairs on the damaged jet. In late 1994, purporting to have finished the necessary repairs to make the jet "airworthy," Osprey released the aircraft for a test flight. After the flight, the pilots concluded that the craft was not airworthy and additional repairs were undertaken by Osprey. Following two more failed test flights, New Hampshire advised Aerospace that the repairs were completed and that the jet was "airworthy." In response, Aerospace retained an aeronautical engineer to evaluate the aircraft. The engineer concluded that the Jetstar was in need of further repairs in order to return it to its pre-accident condition and that Avco and Osprey's repair work was unacceptable.

On December 14, 1995, Aerospace filed a complaint in the Court of Common Pleas of Allegheny County alleging breach of contract, negligence and violation of Pennsylvania's Bad Faith Act, 42 Pa.C.S.A. § 8371,[5] against New Hampshire. The complaint, seeking over $3,250,000.00, plus interest and

---

1. According to New Hampshire's verified preliminary objections, on December 22, 1993, New Hampshire applied to change its state of incorporation from New Hampshire to the Commonwealth of Pennsylvania.

2. New Hampshire issued the policy through The Institute of London Underwriters. New Hampshire, however, was considered the subscribing insurer that held 100% of the risk.

3. Aerospace is a Delaware corporation with a place of business in London, England.

4. Aerospace, in its complaint, claims that the decision to have Avco attempt to repair the Jetstar was made against its wishes. Furthermore, Aerospace contends that Avco was neither FAA approved nor approved by Lockheed, the manufacturer of the aircraft.

5. Chapter 42, Subchapter G of the Pennsylvania Consolidated Statutes Annotated denotes circumstances under which a party may recover special damages. Special damages are damages which "are the actual, but not the necessary, result of the injury complained of, and which in fact follow it as a natural and proximate consequence in the particular case, that is, by reason of special circumstances or conditions." *Black's Law Dictionary,* 354 (5th ed. 1979). Section 8371 of this chapter states:

    **Actions on insurance policies**
    In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith towards the insured, the court may take all of the following actions:
    (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
    (2) Award punitive damages against the insurer.
    (3) Assess court costs and attorney fees against the insurer.
    42 Pa.C.S.A. § 8371.

punitive damages,[6] alleged that New Hampshire had failed to return the Jetstar to its pre-accident condition, had failed to properly maintain, preserve and protect the aircraft during the almost two years of repairs, and had refused to pay Aerospace the agreed value of the Jetstar.[7] All of these instances, Aerospace contends, amounted to a breach of the insurance contract between the parties. At the time the complaint was filed in Allegheny County, New Hampshire was incorporated in Pennsylvania.[8] New Hampshire filed preliminary objections, based on the doctrine of *forum non conveniens*, asserting that England is a more appropriate forum for the resolution of the parties' underlying claims. The preliminary objections were denied. Subsequently, the trial court entered an order amending its original order and certifying the issue for our review pursuant to Pa.R.A.P. 311(b)(2).[9] New Hampshire now appeals from this amended and certified order, raising the following issues for our consideration:

(1) In an action on an insurance policy, is dismissal based on *forum non conveniens* appropriate where the policy was solicited, brokered, and issued in England to two insureds which listed their address in England, and where the incident giving rise to coverage occurred in England and where the insurance claim was presented and adjusted in England and where repairs were undertaken in England?

(2) In an action on an insurance policy, is dismissal based on *forum non conveniens* appropriate where the only nexus between the defendant insurance company and Pennsylvania is the fact that the insurer changed its place of incorporation from a foreign state to Pennsylvania after the expiration of the policy at issue, and after the incident giving rise to coverage?

(3) In an action on an insurance policy, is the proximity of counsel and designated expert witnesses insufficient to make a chosen forum county appropriate, especially because no fact witnesses are located in the forum county? [10]

■■■ A trial judge has great discretion in reviewing petitions to change venue based upon *forum non conveniens;* on appeal the superior court must determine whether the trial judge abused that discretion. *Shears v. Rigley,* 424 Pa.Super. 559, 623 A.2d 821 (1993). In order to demonstrate that the trial court has abused its discretion, "an appellant must show that 'in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will.'" *McCrory v. Abraham,* 441

---

6. The agreed upon value of the Lockheed Jetstar, under the parties' policy, was $3,250.000.00.

7. Aerospace, in outlining the defects with the aircraft since the accident, alleged repairs, and initial test flights states that the only way the post-accident problems with the Jetstar can be resolved is if a final test flight could be conducted on the aircraft. It then asserts that because of the inoperability of the aircraft, these important tests cannot be conducted.

8. In its brief, however, New Hampshire repeatedly states that it was not incorporated in Pennsylvania until thirteen months after the Jetstar accident. Prior to its incorporation in this Commonwealth, New Hampshire was incorporated in the state of New Hampshire.

9. Pennsylvania Rule of Appellate Procedure 311(b)(2) states:

An appeal may be taken as of right from an order in a civil action or proceeding sustaining the venue of the matter or jurisdiction over the person or over real or personal property if:

(2) the court states in the order that a substantial issue of venue or jurisdiction is presented.

Pa.R.A.P. 311(b)(2). In the present case, the trial court amended its original order to include the language prescribed by Rule 311(b)(2). *Compare Shears v. Rigley,* 424 Pa.Super. 559, 562 n. 1, 623 A.2d 821, 823 n. 1 (1993) (although an order sustaining venue or jurisdiction over a person is an interlocutory and unappealable order, where the trial court "states in the order that a substantial issue" as to the propriety of this matter's venue and jurisdiction is presented, the appeal is properly before us) *with Centerre Bank v. Arthur Young & Co.,* 348 Pa.Super. 365, 502 A.2d 251 (1985) (where trial court failed to include language certifying interlocutory order denying preliminary objections founded upon *forum non conveniens* grounds, appeal was quashed as interlocutory).

10. Because a *forum non conveniens* analysis involves the "balance of private and public elements," we have consolidated the analysis of appellant's three issues in reviewing this appeal.

Pa.Super. 258, 261, 657 A.2d 499, 501 (1995) (quotation omitted).[11]

As noted in this court's decision in *Page v. Ekbladh*, 404 Pa.Super. 368, 590 A.2d 1278 (1991), the proper analysis of a *forum non conveniens* issue "involves an evaluation of the appropriateness of the two [forums]," Pennsylvania (United States) and England (The United Kingdom). *Id.* at 373, 590 A.2d at 1280. The case before us today, however, presents an issue of first impression for this court: namely, what analysis should guide us in the resolution of the issue of *forum non conveniens* in the context of an **international** setting? Rule 1006(d) explicitly applies to *intrastate* transfer—i.e. county to county. Furthermore, we have found that 42 Pa. C.S.A. § 5322 applies in the analysis of an *interstate* forum dispute. *See Shears, supra.* In *Shears*, however, our court astutely observed that because both Rule 1006 and 42 Pa.C.S.A. § 5322 are derived from the common law doctrine of *forum non conveniens*, both interstate and intrastate cases apply the doctrine similarly. Due to the fact that the doctrine of *forum non conveniens* is based upon a common law notion, we will remain consistent in employing the standard used by our state courts with regard to inter/intrastate dismissal for forum challenges in the context of this international setting.

The doctrine of *forum non conveniens* was employed as "a necessary counterbalance to insure fairness and practicality." *Okkerse v. Howe*, 521 Pa. 509, 518, 556 A.2d 827, 832 (1989). It is used where the defendant:

[C]learly adduces facts that *either* (1) establish such oppressiveness and vexation to a defendant as to be out of all propor-

tion to plaintiff's convenience *or* (2) make a trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

*Forman v. Rossman*, 449 Pa.Super. 34, 39, 672 A.2d 1341, 1343 (1996) (emphasis in original) (*en banc*), *appeal granted*, 545 Pa. 653, 680 A.2d 1162 (1996). The party seeking a change in venue bears a heavy burden in justifying the request, and it has been consistently held that this burden includes the demonstration *on the record* of the claimed hardships. *Okkerse*, 521 Pa. at 517–19, 556 A.2d at 832.

Due to this Commonwealth's dearth of forum transfer cases in an international context, we are guided by our United States Supreme Court's landmark decision, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). In *Piper*, an American-manufactured airplane crashed in Scotland, killing Scottish citizens. An administratrix of the estates of several of the decedents commenced a wrongful death action in the Superior Court of California against the plane's manufacturers.[12] The suit was removed to California Federal District Court and then transferred, pursuant 28 U.S.C.S. § 1404(a), to the United States District Court for the Middle District of Pennsylvania. Both defendants moved to dismiss the action on the ground of *forum non conveniens*, which the District Court granted after balancing the private interest factors affecting the convenience of the litigants and the public interest factors affecting the convenience of the United States forum. The District Court found that Scotland, the situs of the accident and the home of the dece-

11. Aerospace asserts that New Hampshire improperly filed preliminary objections, rather than a petition, to raise its *forum non conveniens* challenge. While we agree with Aerospace's contention that a petition, not preliminary objections, is the proper vehicle in which to raise a *forum non conveniens* challenge, Aerospace has failed to file preliminary objections to New Hampshire's improper use of preliminary objections. *See* Pa.R.C.P. 1028. We, therefore, find this issue waived. *See Preiser v. Rosenzweig*, 418 Pa.Super. 341, 614 A.2d 303 (1992), *affirmed in*, 538 Pa. 139, 646 A.2d 1166 (1994) (when a plaintiff objects to the matters contained in a defendant's preliminary objection, and asserts

that such matter should have been raised via an answer and new matter, the plaintiff is *required* to file a preliminary objection to defendant's preliminary objection and raise the procedural defect); *see also Duquesne Slag Prod. v. Lench*, 490 Pa. 102, 415 A.2d 53 (1980) (a plaintiff waives the right to object to a defendant's form of pleading if he or she fails to file preliminary objections to defendant's preliminary objections); *Heinrich v. Conemaugh Valley Mem. Hosp.*, 436 Pa.Super. 465, 648 A.2d 53 (1994) (same).

12. The action specifically contained counts for negligence and strict liability.

dents, was a more convenient and proper forum in which to litigate the action.

On appeal, the United States Court of Appeals for the Third Circuit reversed, holding that the District Court had abused its discretion in conducting the forum analysis and found that dismissal of an action is never appropriate where the law of the alternative forum is less favorable to the plaintiff. Certiorari was granted and the United States Supreme Court reversed the decision of the Third Circuit, holding: (1) plaintiffs may not defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the chosen forum, and (2) that the Federal District Court did not abuse its discretion by weighing the private and public interest factors and granting the defendants' motion to dismiss. *Piper,* 454 U.S. at 247–48, 102 S.Ct. at 261–62. The Supreme Court emphasized that a court may find that the presumption in favor of a plaintiff's choice of forum may be less stringently considered when the plaintiff has chosen a foreign forum to litigate his or her claims. *Piper,* 454 U.S. at 255, 102 S.Ct. at 265–66 (citing *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The Court stated that "[w]hen the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable." *Id.* Furthermore, the Supreme Court agreed with the District Court's conclusion that the "problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in Scotland." *Id.* at 259, 102 S.Ct. at 267. Finally, the *Piper* court also stated that the need to apply foreign law to an American dispute was a factor that favored dismissal of the action to the foreign forum. *Id.* at 260, 102 S.Ct. at 268 (citing *Gilbert, supra*).

Although Aerospace, like the plaintiff in *Piper,* has not chosen its home forum as the situs to commence the underlying action, we are not bound, like the *Piper* court, to assume that the forum of Pennsylvania is unreasonably inconvenient for the plaintiff.

Any state in our United States would, most likely, be significantly more convenient for the American plaintiff than trying its case in the defendant's preferred forum, a foreign country. Furthermore, in deciding to transfer the case to another forum, the *Piper* court found that fewer evidentiary problems would be posed if the trial were held in Scotland because a large portion of the relevant evidence was located in Great Britain. *Piper,* 454 U.S. at 257–58, 102 S.Ct. at 266–67. On this point, we also find the instant case distinguishable from the *Piper* decision. Although New Hampshire places great emphasis on the fact that the damaged Jetstar remains in England, the hearing testimony reveals that the aircraft is soon to be scrapped for salvage and that proper documentary evidence of the condition of the jet has been sufficiently preserved—thus, abolishing the need to view the accident scene or the damaged aircraft during trial. In fact, Mr. Anthony Seakins, the aviation claims manager for AIG, was unable to produce any documentation relating to the fact that the Jetstar was based in England prior to the accident or where the aircraft was housed as of the date of the accident. *See Beatrice Foods Co. v. Proctor & Schwartz,* 309 Pa.Super. 351, 455 A.2d 646 (1982) (where defendant has not shown that a view of the premises will be necessary or helpful to its case, trial court did not abuse its discretion in denying defendant's motion to dismiss for *forum non conveniens*). We, therefore, find these issues unpersuasive in a decision to warrant a transfer in venue of this case.

New Hampshire asserts that it was improper for the trial court to determine that Pennsylvania is the more proper forum in which to litigate this action based upon the fact that none of plaintiff's fact witnesses are located in this Commonwealth. Specifically, New Hampshire claims that the proximity of counsel and expert witnesses to a given forum is not a sufficient reason to deny transferring this case to England. We note that our court has consistently held that the location of expert witnesses is not a factor to be given significant consideration when weighing the factors in a *forum non conveniens* analysis. *See Norman v. Norfolk and Western Railway Co.,* 228 Pa.Super. 319, 323 A.2d

850 (1974) (while plaintiff's expert resides in the county where the suit was brought, because experts are selected by the parties and are available virtually anywhere in the United States, we should not give controlling weight to this factor; any plaintiff would be allowed to circumvent the *forum non conveniens* doctrine by choosing an expert in an inconvenient forum). Rather, our court has found that refusal to transfer a case on the doctrine of *forum non conveniens* based upon the location of a plaintiff's expert witnesses is improper and an abuse of discretion. *See Wills v. Kaschak*, 420 Pa.Super. 540, 544 n. 1, 617 A.2d 37, 39 n. 1 (1992) (where plaintiff contended that her expert witnesses resided in Philadelphia, such contention was an inadequate basis for the court's refusal to transfer venue); *Daugherty v. Inland Tugs Co.*, 240 Pa.Super. 527, 359 A.2d 465 (1976) (where plaintiff-widow's action's sole contact with Pennsylvania forum was Pennsylvania residence of expert witnesses selected by widow, plaintiff would suffer no prejudice if action was dismissed in Pennsylvania; contacts with Pennsylvania were so slight that trial court's failure to dismiss case on grounds of *forum non conveniens* was an abuse of discretion).

■ Presently, the bulk of Aerospace's witnesses which it claims reside in the United States (primarily Pennsylvania) are expert witnesses who will be used to testify regarding the pre/post-accident condition of the Jetstar and the general characteristics of such type of aircraft.[13] While we recognize that the location of plaintiff's expert witnesses is not a factor that should be considered in failing to transfer this case, Aerospace, however, has demonstrated additional facts that provide the required nexus in order to prove that Pennsylvania is the more proper forum for this case: (1) New Hampshire is incorporated, headquartered and holds 100% of the risk [of the Jetstar] in Pennsylvania; (2) New Hampshire maintains an office and conducts regular business in Allegheny County; (3) New Hampshire is regulated by the Pennsylvania Department of Insurance; and (4) New Hampshire collected $14.8 million in premiums in Pennsylvania in 1995. After a review of the record, we also uncover the following significant connections with the underlying lawsuit to the American forum: (1) the Jetstar was and has been at all times registered in the United States, *cf. Piper, supra* (American-manufactured aircraft was registered in Great Britain); (2) the Jetstar was owned by Aerospace, an American (Delaware) corporation, *cf. Piper, supra* (aircraft was owned, operated and maintained by organizations located in the United Kingdom); (3) the plane was piloted by two FAA-licensed United States citizens; (4) prior owners, operators, and maintenance persons of the aircraft are located in the United States; and (5) the records concerning the design, manufacturer, and testing of the Jetstar are located in the United States.

At two hearings which have been transcribed and made a part of the record for our review, New Hampshire adduced the following facts to support its *forum non conveniens* challenge: (1) the policy was solicited, brokered, and issued in England to two insureds which listed their address in England; (2) the incident giving rise to coverage occurred in England; (3) the insurance claim was presented and adjusted in England; (4) the repairs to the Jetstar were undertaken in England; (5) witnesses who could testify regarding the repair work done on the Jetstar are located in England; and (6) the test flights conducted during and after the repairs and the witnesses to these test flights are located in England.

■ In addition to these contentions, New Hampshire asserts that a "parallel action [is] currently pending in England." In his hearing testimony, Mr. Seakins testified that the complaint for the English action (filed on March 25, 1996—three months after the filing of the Aerospace complaint in Allegheny

---

**13.** At a hearing, co-counsel for Aerospace testified that it has listed as witnesses: a metallurgist from Carnegie Mellon, an airworthiness representative designated by the FAA, an expert pilot who has had extensive experience with piloting Jetstar aircrafts, the FAA Flight Standards District Office, various operators of other Jetstar aircrafts, USAir (now USAirways), Inc. who had been presented with a flight vision program that was installed on the damaged aircraft, and a professor on insurance law who will testify as to any issues arising out of the insurance policy.

County) had not yet been served on Aerospace. If this alleged "parallel [declaratory judgment] action" had been a prior pending suit in the foreign forum, we may have considered this as a factor warranting the potential stay of this second action or possible transfer and consolidation of the two actions in England. *Cf. Life Assurance Co. of Pennsylvania v. Associated Investors Intern. Corp.*, 312 A.2d 337 (Del.Ch.1973) (where breach of contract action had been pending for two years in England, prior to the commencement of action for fraud in the United States, court ordered that a stay of the American action, not a transfer of the case to England, was appropriate). We will not, however, allow New Hampshire's commencement of this second action to be a fact considered in transferring the case to a more desirable forum chosen by the defendant. *See Life Assurance, supra* (a defendant should not be permitted to defeat the plaintiff's choice of forum in pending suit by commencing litigation involving the same cause of action in another jurisdiction of its own choosing; such an action would go against the necessities of an orderly and efficient administration of justice).

Viewing all of the evidence of record, we find that New Hampshire has a number of witnesses located in England who will witnesses will provide a large basis for New Hampshire's defense to the negligence claim brought by Aerospace. We are just as cognizant of the fact, however, that our American discovery rules are far more liberal than those of our British counterpart; with regard to pre-trial discovery, our court would allow the use of foreign depositions of these En-

glish witnesses for a Pennsylvania trial. *Aboujdid v. Gulf Aviation Co., Ltd.*, 108 Misc.2d 175, 437 N.Y.S.2d 219, 222 (N.Y.Sup. 1980). On the other hand, English rules would not necessarily allow American witnesses to be deposed for use in an English trial. *Id.* Furthermore, we find that the remaining counts of the complaint—contractual and bad faith claims—are based on the central issue of whether New Hampshire fulfilled its obligation to satisfactorily repair the Jetstar according to the terms of its insurance policy.[14] In order to prove or disprove these claims the courts and parties will have to undertake an interpretation of the parties' Aviation Hull and Liability policy issued on July 18, 1992.[15]

Based upon the evidence presented to the trial court at two hearings, as well as the facts contained in the record, we cannot conclude that the trial court abused its discretion, exercised a judgment that was manifestly unreasonable, or made a decision that was the result of partiality, prejudice, bias, or ill will by refusing to dismiss the case based on the doctrine of *forum non conveniens. Shears, supra.* The American interest in this case is "sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper,* 454 U.S. at 261, 102 S.Ct. at 268. This is not a case where the issue of convenience can simply be resolved by moving the action to a neighboring county or even a county in another state. If we were to transfer this matter to England, we would be subjecting numerous persons to international travel and inconvenience. In line with a number of cases from

**14.** According to the insurance policy:
> **SECTION 1—AIRCRAFT HULLS**
>   1.1 *COVERAGE*
>   (a) The Company [New Hampshire] will at their option pay for, or repair, accidental physical loss of or damage to Aircraft described in the Declarations arising from the risks covered ... but not exceeding the agreed value as shown in item 7 of the Declarations subject to the amounts to be deducted shown below.
>   (b) If the Aircraft is insured hereunder for the risks of flight, the Company will, in addition, pay reasonable emergency expenses necessarily incurred by the Named Assured for the immediate protection against further

> loss of or damage to the Aircraft consequent upon damage or forced landing, up to ten percent (10%) of the agreed value specified in item 7 of the Declarations.
> Furthermore, certain exclusions applicable to this section of the policy are listed, including:
>   1.2 *EXCLUSIONS APPLICABLE TO THIS SECTION ONLY*
>   The Company shall not be liable for
>         * * *
>   (d) loss of use or any residual depreciation in value (if any) after repairs have been made.

**15.** The policy was written by AIG, an English agency, on behalf of New Hampshire.

other jurisdictions that deal with the doctrine of *forum non conveniens* in an international setting,[16] we decline to find that plaintiff's choice of forum (Pennsylvania) is so oppressive and vexatious to New Hampshire Insurance Company, or, inappropriate because of considerations affecting the court's own administrative and legal problems. *Forman, supra.* Presently, there is a relevant connection between the litigation and the chosen forum. The Pennsylvania-defendant denies that it has failed to satisfy conditions under its policy of insurance issued to a Delaware-plaintiff. Pennsylvania has an interest in resolving controversies regarding an insurance company incorporated within its own Commonwealth. Furthermore, the underlying action is based upon a contractual duty. The contract of insurance, while prepared by a London-based firm, holds its insured risks in this Commonwealth. We, therefore, find a sufficient nexus of convenience between this case and the Commonwealth of Pennsylvania in order to affirm the trial court's denial of New Hampshire's preliminary objections on the basis of *forum non conveniens.*

Order affirmed.

---

**16.** *See Jones v. Searle Laboratories,* 100 Ill.App.3d 165, 55 Ill.Dec. 592, 426 N.E.2d 917 (1981) (court reversed trial court's dismissal of suit based on doctrine of *forum non conveniens* where defendant, a delaware corporation, developed oral contraceptives that allegedly caused plaintiffs', residents of the United Kingdom, injuries; after weighing the relevant factors, the case should not have been dismissed where the chosen forum had a very relevant connection to the underlying suit; state had an interest in the litigation of a state manufacturer); *World Point Trading Pte. Ltd. v. Credito Italiano,* 163 Misc.2d 917, 622 N.Y.S.2d 862 (1994) (where defendant's witnesses were all in Italy and all events oc-

curred and all participants are located outside of New York, dismissal based on *forum non conveniens* grounds was not warranted; there was sufficient nexus to chosen forum of New York); *Aboujdid, supra* (New York, plaintiffs' chosen forum, was appropriate forum for lawsuit against a Singapore Airlines where Malaysian corporation had allegedly negligently permitted Palestinian armed terrorists to embark on its flight to Athens; some of the plaintiffs were New York residents and extensive legal work had already been performed there; no other compelling reason existed to prefer some other forum as being more appropriate).