J-A27034-25          2026 PA Super 58

| | | |
|---|---|---|
| ELIZABETH DUXBURY AND BRIAN DUXBURY, W/H | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2876 EDA 2024 |
| RECONSTRUCTIVE ORTHOPEDIC ASSOCIATES II, P.C. D/B/A THE ROTHMAN INSTITUTE OF NEW JERSEY, ATLANTICARE SURGERY CARE, ALYSON AXELROD, D.O. | : | |

Appeal from the Order Entered September 26, 2024
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 230601031

BEFORE: BOWES, J., MURRAY, J., and BECK, J.

OPINION BY BECK, J.:                    **FILED MARCH 25, 2026**

Elizabeth Duxbury ("Elizabeth") and Brian Duxbury ("Brian") (collectively, "the Duxburys") appeal from the order entered by the Philadelphia County Court of Common Pleas ("trial court") granting the motion to dismiss for forum non conveniens filed by Reconstructive Orthopedic Associates II, P.C. ("ROA") d/b/a The Rothman Institute of New Jersey ("RINJ")[1] (collectively "Appellees"), Atlanticare Surgery Care ("ASC"), and

---

[1] On January 1, 2020, RINJ and Rothman Orthopaedics of New Jersey, LLC merged, and the surviving business was named Rothman Orthopaedics of New Jersey, LLC ("RONJ"). On that same date Reconstructive Orthopedic Associates II, P.C. converted to Reconstructive Orthopaedic Associates II, LLC.
*(Footnote Continued Next Page)*

Alyson Axelrod, D.O.,[2] and directing that the action be refiled in New Jersey. The Duxburys contend that the trial court erred in its application of existing precedent regarding forum non conveniens and that a consideration of the facts under a correct application of the law does not support transfer of the action to New Jersey. After careful review, we reverse the trial court's order and remand for further proceedings in Philadelphia County.

## Pertinent Facts and Procedural History

The record reflects that in their second amended complaint,[3] the Duxburys alleged that Elizabeth suffered from lower back pain and dysfunction and was a patient at Rothman Urgent Care in Marlton, New Jersey. Second Amended Complaint, 10/3/2023, ¶¶ 31-32. While treating Elizabeth, Rothman Urgent Care referred her to Dr. Axelrod for further treatment. *Id.* ¶¶ 33. Elizabeth saw Dr. Axelrod at the Egg Harbor, New Jersey location of RINJ on June 7, 2021. *Id.* ¶ 34. At this appointment, Dr. Axelrod suggested bilateral transforminal epidural injections by fluoroscopic guidance to treat the

_____

RONJ is a limited liability company under the laws of New Jersey, but has its principal place of business in Philadelphia. According to Appellees, RONJ and ROA have the same ownership and practice group, but ROA is a separate business entity from RONJ. Appellees' Brief at 10-11.

[2] ASC and Dr. Axelrod are not a part of this appeal. *See* The Duxburys' Brief at 5 ("Dr. Axelrod has been dismissed as a defendant in this matter."); Trial Court Opinion, 2/10/2025, at 1 (noting ASC was dismissed as a party by stipulation).

[3] The Duxburys initiated the action by filing their original complaint on June 12, 2023.

lower back pain. *Id.* ¶¶ 35-37. Dr. Axelrod administered the epidural injections into Elizabeth's back on June 25, 2021, in Egg Harbor. *Id.* ¶¶ 37, 42. When Dr. Axelrod inserted the first needle into Elizabeth's right side, she felt a sensation like an electrical shock, and what felt like pins and needles in her right leg. *Id.* ¶¶ 42, 49. The Duxburys contend that Dr. Axelrod failed to use fluoroscopic guidance when administering the shot. *Id.* ¶ 46.

The following day, Elizabeth began experiencing headaches. *Id.* ¶¶ 50-51. She called the emergency line at the office, after which she was prescribed Fioracet for the headaches. *Id.* ¶¶ 53, 56-57. Elizabeth subsequently went to the emergency room where they performed a blood patch. *Id.* ¶¶ 58, 60. She then underwent treatment from multiple providers in the greater Philadelphia area,[4] ultimately coming under the care of Dr. Linda Grey at Duke University Medical Center, who was a specialist cerebrospinal fluid leaks. *Id.* ¶¶ 63, 65. When Dr. Grey attempted to obtain copies of the fluoroscopic imaging from RINJ, she was told no images were performed. *Id.* ¶¶ 67-68. Elizabeth averred that she suffered various injuries, including pain, suffering, emotional distress, headaches, problems with balance, and memory loss. *Id.* ¶ 69.

The Duxburys raised a negligence claim against Appellees for the care of Elizabeth and loss of consortium claims on behalf of Brian. Of relevance to

_____

[4] Elizabeth underwent treatment from Dr. William Welch, a neurosurgeon, Dr. Bryan A. Pukenas, a radiologist, and Dr. Marcia Halpern, a neurologist.

this appeal, the Duxburys alleged that ROA has a principal place of business in Philadelphia and RINJ, while existing under the law of New Jersey, has a place of business in Philadelphia. *Id.* ¶¶ 4-5. They further averred that Dr. Axelrod is licensed to practice in New Jersey and Pennsylvania, specializes in physical medicine and rehabilitation, is an employee and agent of ROA and RINJ, and lists her professional address in Egg Harbor, New Jersey. *Id.* ¶¶ 7, 15-24.

Appellees filed an answer with new matter. Subsequently, Appellees filed a motion to dismiss pursuant to 42 Pa.C.S. § 5322(e)[5] and forum non conveniens. The Duxburys filed a response to this motion. The trial court permitted discovery as to the forum issue. Ultimately, the trial court granted the motion to dismiss and directed the Duxburys to file the complaint in New Jersey. The Duxburys appealed.

On appeal, the Duxburys raise the following questions for our review:

1. Did the lower court abuse its discretion when it dismissed the matter on the basis of forum non conveniens, where the stated "weighty reasons" it relied upon to oust Plaintiffs[] from their chosen forum, were the same "reasons" expressly rejected by

_____

[5] In Pennsylvania, the doctrine of forum non conveniens, which originated in Common Law, has been codified by statute:

> **Inconvenient forum.-**When a tribunal finds that in the interest of substantial justice the matter should be heard in another forum, the tribunal may stay or dismiss the matter in whole or in part on any conditions that may be just.

42 Pa.C.S. § 5322(e).

the Pennsylvania Supreme Court in **Walker v. Ohio River Co.**, 205 A.2d 43, 46 (Pa. 1964)[?]

2. Did the lower court abuse its discretion when it dismissed the matter against the Defendants on the basis of forum non conveniens, where: 1) defendant ROA is incorporated in the Commonwealth of Pennsylvania; 2) defendant ROA's registered place of business is in the City of Philadelphia; 3) defendant ROA's principal/primary place of business is in the City of Philadelphia; 4) defendant RINJ's registered place of business and primary place of business is in the City of Philadelphia at the same address as ROA; 5) [] the lower court failed to hold the defendants to the burden of proof articulated by this Honorable Court in **McConnell v. B. Braun Medical Inc.**, 221 A.3d 221 (Pa. Super. 2019); and 6) where the public and private factors test favor keeping the case in the Commonwealth of Pennsylvania?

3. Did the lower court err in both its private and public interest factors analysis?

4. Should this Honorable Court adopt a bright line rule that a case cannot be transferred or dismissed based on forum non conveniens when the case is brought in the jurisdiction in which a corporate defendant: 1) has its principal/primary place of business; 2) has its registered office; and/or 3) is brought in the state in which defendant is incorporated?

The Duxburys' Brief at 3-4.

## Legal Standards

We review an order ruling upon a motion to dismiss based upon the doctrine of forum non conveniens for an abuse of discretion. **Hurt for Est. of Jones v. Penn Cent. Corp.**, 250 A.3d 1227, 1234 (Pa. Super. 2021). "This standard applies even where jurisdictional requirements are met. Moreover, if there is any basis for the trial court's decision, the decision must stand." **Id.** (citation omitted). "An abuse of discretion occurs if, inter alia, there was

an error of law or the judgment was manifestly unreasonable. When reviewing for errors of law, the appellate standard of review is de novo and the scope of review is plenary." *Id.* (citation omitted).

> The doctrine of forum non conveniens provides the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances.

> The two most important factors the trial court must apply when considering whether dismissal is warranted are that 1.) the plaintiff's choice of forum should not be disturbed except for 'weighty reasons,' and 2.) there must be an alternate forum available or the action may not be dismissed.

*Ficarra v. Consol. Rail Corp.*, 242 A.3d 323, 329-30 (Pa. Super. 2020) (citation omitted).

> A plaintiff's choice of forum is entitled to deference, but to a somewhat lesser degree when the plaintiff's residence and place of injury are located somewhere else. … Furthermore, a court will … not dismiss for forum non conveniens unless justice strongly militates in favor of relegating the plaintiff to another forum.

> To determine if "weighty reasons" overcome the deference afforded to a plaintiff's choice of forum, the trial court must examine both the private and public interest factors involved in the case. The private factors include:

>> the relative ease of access to sources of proof; availability of compulsory process for attendance for unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

> As to the public factors, trial courts must take into account several circumstances, including that:

administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. There is an appropriateness, too, in having the trial ... in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

With respect to these factors, a defendant must show that the plaintiff's chosen forum is inconvenient to the defendant. A defendant cannot merely assert that dismissal is warranted because the chosen forum is inconvenient to the plaintiff in some way. Accordingly, it is difficult for a defendant to show that convenience is a factor that weighs in favor of dismissal where it is headquartered in the chosen forum, even if the plaintiff resides elsewhere.

**McConnell**, 221 A.3d at 227-28 (formatting changed; citations omitted).[6] In

analyzing these factors, "the proper consideration is between the two states,

---

[6] The Duxburys cited to **Bochetto v. Piper Aircraft Co.**, 94 A.3d 1044, 1056 (Pa. Super. 2014), for the proposition that a plaintiff's "choice of forum is always entitled to deference even when the place of injury and plaintiff's residence are located outside the forum." The Duxburys' Brief at 13. The Duxburys ignore, however, that the **Bochetto** Court further stated, "foreign plaintiffs enjoy 'less deference' with regard to their choice of forum[.]" **Bochetto**, 94 A.3d at 1056 (citation omitted); **see also, e.g., McConnell**, 221 A.3d at 227; **Wright**, 215 A.3d at 991. This Court utilized reasoning from the United States Supreme Court in finding that a foreign plaintiff is entitled to less deference under this doctrine. **See Aerospace Fin. Leasing, Inc. v. New Hampshire Ins. Co.**, 696 A.2d 810, 814 (Pa. Super. 1997) (citing **Piper Aircraft Co. v. Reyno**, 454 U.S. 235, 255 (1981) ("The Supreme Court emphasized that a court may find that the presumption in favor of a plaintiff's choice of forum may be less stringently considered when the plaintiff has chosen a foreign forum to litigate his or her claims."). As we are bound by the prior decisions of this Court, we will proceed with the understanding that the Duxburys' choice of forum in Philadelphia County is entitled to deference,
*(Footnote Continued Next Page)*

not specific counties within them." ***Failor v. FedEx Ground Package Sys., Inc.***, 248 A.3d 527, 535 (Pa. Super. 2021). "It is within the trial court's discretion to weigh some of these factors more heavily than others," because "weighing the factors is not an exercise in counting numbers." ***Lyndes v. Penn Central Corporation***, 254 A.3d 725, 738 (Pa. Super. 2021).

### Trial Court's Decision

The trial court dismissed the Duxburys' complaint and directed it be filed in New Jersey, providing the following explanation for its decision:

> [W]eighty reasons support the dismissal of this matter in Pennsylvania for it to be refiled in New Jersey where [the Duxburys'] injuries were sustained. [Elizabeth's] medical treatments leading up to the incident and the medical treatment which is the subject of this matter occurred in New Jersey, all identified medical providers who treated [Elizabeth] before and during the incident in this matter reside in New Jersey, all of the Appellees' identified potential witnesses reside in New Jersey, except for a potential witness who resides in North Carolina, [the Duxburys] identified two potential witnesses who reside in Pennsylvania, [and] all relevant medical records are located in New Jersey.
>
> [The Duxburys] purport[] that their only burden of proof is to establish that [Appellees] have their principal place of business and corporate headquarters in Philadelphia; and that [Dr.] Axelrod is licensed to practice in Pennsylvania, is under contract with [Appellees] to treat Philadelphia patients, and is obligated to litigate any employment contract disputes in Philadelphia. All of

_____

albeit to a lesser extent, as they reside in New Jersey and Elizabeth suffered her injuries in New Jersey.

Additionally, we note that the second factor—the existence of an alternate forum—is not at issue in this case, and that Appellees have stipulated that they are waiving any claims related to the statute of limitations in relation to refiling the action in New Jersey. ***See*** Appellees' Brief at 14.

that is conceded by Appellees. However, the forum non conveniens analysis does not end there. It is similarly agreed by the litigants that: [the Duxburys] and [Dr. Axelrod] are residents of New Jersey; all the treatment leading up to and including the treatment alleged to have caused harm occurred at the [RINJ] facility in New Jersey. Some subsequent treatment occurred in the Philadelphia area.

…RONJ[] is a merged limited liability entity … with [its] principal place of business in Philadelphia. The [c]ompany exists under the laws of New Jersey, and other than the Philadelphia address, has no other ties to Philadelphia. [Elizabeth's] care was initiated at Rothman Urgent Care in Marlton, New Jersey, whose doctors referred her to [Dr.] Axelrod where the questioned procedure was performed at RONJ, Egg Harbor, New Jersey location. When [Elizabeth] experienced headaches she initially complained to and followed up with health care professionals and [Dr.] Axelrod in New Jersey. At her deposition, [Rothman designee,] [Nicole] Coleman[,] testified regarding the burdensome and disruptive impact on the Egg Harbor, New Jersey personnel and patients, when the medical professionals are called to testify, particularly if trial were held in Philadelphia. [N.T., 9/12/2024, at 87, 92-93.]

[Dr.] Axelrod's affidavit supports that she is a New Jersey resident, maintains no office in Pennsylvania, renders medical care at two New Jersey locations, and never provided care to [Elizabeth] in Pennsylvania. [Dr.] Axelrod's deposition testimony was in the same vein where she elaborates on the hardship that would impact her personal and professional matters if the litigation were to remain in Philadelphia. [N.T., 9/17/2024, at 91-101.] The distance from [Dr. Axelrod's] New Jersey residence to the Philadelphia Courthouse versus that of locations in New Jersey was not the key concern. Rather, [Dr.] Axelrod's hardships related to a leg injury causing walking difficulties, coupled with the stress of the commute into Philadelphia. *Id.* at 88-89. A major concern for [Dr.] Axelrod was the impact on her patients having access to her given her already limited schedule. *Id.* at 98-101. [Dr. Axelrod's] personal concerns included being able to care for her two young children, and her mother. *Id.* at 88-89.

In addition to [Dr.] Axelrod, individuals who assisted the [d]octor with [Elizabeth's] procedure include the X-Ray technician[, Nicole Bowman,] who is located solely in New Jersey;

- 9 -

and Nurse[] Erin O'Hara living in Colorado. *Id.* at 89-90. Eight other potential medical care witnesses are identified by Appellee as having been involved in [Elizabth's care] pre[-] and post[-]procedure, all of whom provided the care exclusively in New Jersey. All of the documents related to [Elizabeth's] procedure are maintained at the Egg Harbor, New Jersey location; the location where the procedure was performed. [*Id.*]

In contrast, [the Duxburys] reference[] only three witnesses who provided post[-]operative medical treatment for [Elizabeth's] concerns, two in the Philadelphia area; and one, a physician at Duke University Medical Center. [The Duxburys] failed to provide convincing evidence or argument to undercut Appellees meeting its burden of "weighty reasons exist to disrupt a [p]laintiff's choice of forum."

The [trial c]ourt has reviewed the competing arguments as to the required considerations in forum non conveniens matters, and find under the totality of the circumstances, Appellees' to be most compelling.

Trial Court Opinion, 2/10/2025, at 6-9 (some citations and capitalization omitted).

## The Duxburys' Arguments on Appeal

We will address together the Duxburys' interrelated claims that the trial court abused its discretion in dismissing the action in Philadelphia County. In reaching its decision, the Duxburys allege that the trial court improperly applied the burden of proof for forum non conveniens cases by reviewing the competing arguments, and finding "Appellees' to be most compelling." The Duxburys' Brief at 19. They assert that the correct burden of proof requires Appellees to establish weighty reasons to disturb the chosen forum, and does not allow the court to weigh competing arguments about the proper forum. *Id.* at 18-19. The Duxburys claim that the trial court relied almost exclusively

on the fact that New Jersey is where they reside and where the medical care in question occurred, which, in effect, implicitly shifted the burden of proof to them to prove the action was properly brought in Pennsylvania. *Id.* at 19-20; *see also id.* at 20 (stating that the trial court focused on their lack of ties to Pennsylvania without addressing their arguments). They additionally argue that by transferring the case to New Jersey, an expeditious trial would not be possible, as discovery in a medical malpractice case takes twenty months causing the trial to be delayed until 2027. *Id.* at 33.

The Duxburys also take issue with the trial court's analysis of the private and public interest factors. *Id.* at 25. In reviewing the weighty reasons for granting Appellees' motion, the Duxburys argue that the trial court failed to account for the relevant links that the instant case has to Pennsylvania. *Id.* at 24, 26, 32, 36, 39-41. They highlight that Dr. Axelrod is licensed and holds medical privileges in Pennsylvania, she only lives fifteen miles from the courthouse in Philadelphia County, ROA's principal place of business is in Pennsylvania, Appellees advertise and provide care in Pennsylvania, and Dr. Axelrod is no longer a party to the action and would not be needed in court every day. *Id.*; *see also id.* at 31 (noting that Dr. Axelrod lived more than fifty miles from the courthouse that potentially could be used in New Jersey, and her testimony stating Philadelphia County was too burdensome to travel was not credible).

Additionally, as part of the private factors analysis, the Duxburys contend that the trial court's finding that RONJ's principal place of business was nothing more than an address was erroneous. *Id.* at 26-27. More specifically, they assert that having a principal place of business in Pennsylvania, not New Jersey, afforded Appellees the benefits of doing business in Pennsylvania, and any collection of judgment would be at their principal place of business in Pennsylvania. *Id.* at 27, 39-40. The Duxburys further observe that Appellees' designee, Coleman, indicated that ROA and RONJ were a single medical practice group and that Dr. Axelrod's amended employment contract included that any dispute under the contract would be litigated under Pennsylvania law and be heard in Philadelphia County. *Id.* at 28, 36-37, 39, 40, 41.

According to the Duxburys, there is nothing in the record to establish that any witnesses would refuse to attend a trial in Pennsylvania. *Id.* at 24-25. They argue that the majority of the witnesses identified by Appellees were unimportant, as the principal witnesses will be the parties to the action, Elizabeth's subsequent treating physicians, and expert witnesses. *See id.* at 37 (identifying Dr. Axelrod, Dr. Welch, Dr. Pukenas, and Dr. Gray as the "important" witnesses); *id.* at 37-38, 39 (rebutting Appellees' claim that providers relevant to the case are New Jersey providers and stating that Elizabeth's primary care physician, therapist, and neurologist have offices in Pennsylvania and are willing to travel to Philadelphia County). The Duxburys

claim that the assertions of inconvenience by the witnesses and Appellees were not credible, and that the hardships related Dr. Axelrod's leg injury would be present whether driving to Philadelphia County or a courthouse in New Jersey. *Id.* at 32, 34-36, 38; *see also id.* at 32-33 (asserting that the stress of a commute is not a valid reason to dismiss for forum non conveniens). Any inconvenience experienced by Appellees' employees is to the result of their decision to practice in New Jersey, and should not be a basis to disturb their choice of forum. *Id.* at 30. They conclude that the private interest factors do not weigh in favor of Appellees, and instead support their chosen forum of Philadelphia County. *Id.* at 39.

As to the public factors, the Duxburys contend that Pennsylvania has an interest in the litigation because Appellees have a principal place of business and provide medical care in Pennsylvania. *Id.* at 40-41. In particular, because Dr. Axelrod provides medical care in Pennsylvania, the citizens of this Commonwealth have interest in this action. *Id.* at 41. The Duxburys request that this Court implement a bright line rule stating that a corporate defendant which is incorporated and/or has a principal place of business in Pennsylvania cannot seek dismissal of an action under forum non conveniens against it in Pennsylvania. *Id.* at 42-44. Further, they emphasize that the law pertaining to medical malpractice is not materially different in Pennsylvania and New Jersey, members of Appellees' legal representation are licensed to practice in

Pennsylvania, and it would not be a burden on Philadelphia County to apply New Jersey law. *Id.* at 41-42.

**Discussion**

Private Factors

As discussed above, the burden of establishing that Pennsylvania is a less convenient forum than another available forum lies with Appellees. In finding that New Jersey is a more convenient forum, the trial court focused on the remoteness of the case from Pennsylvania, including the availability of New Jersey witnesses, location of the purported negligence and injuries, the Duxburys' residence, and the burden on the medical practice if the case is tried in Philadelphia County. The trial court, however, was obligated to weigh the circumstances linking the case to Pennsylvania as well and to determine whether Pennsylvania was an inconvenient forum, not simply that New Jersey was a more convenient forum for Appellees. *See Failor*, 248 A.3d at 537 (stating that "[d]etermining forum non conveniens required the court to consider the relative convenience" of the two states). The trial court's failure to do so constitutes an error of law.

*Securing Witnesses*

The trial court relies heavily on the burden that trying the case in Philadelphia would impose on Dr. Axelrod, citing her leg injury, concern about driving to Philadelphia, and the potential impact her travel to Philadelphia would have on her medical care for patients. However, these difficulties—

- 14 -

including driving, parking, walking to the courthouse, and having to reschedule patients—would also be present if the case was tried in New Jersey. *See Farley v. McDonnell Douglas Truck Servs., Inc.*, 638 A.2d 1027, 1031 (Pa. Super. 1994) ("The burdens of trying this case in New York appear to be equal to the burdens of trying the case in Philadelphia, Pennsylvania."); *see also* N.T., 9/12/2024, at 94 (wherein Coleman acknowledged that any court case potentially places a burden on a medical practice). Although Dr. Axelrod testified that holding the trial in New Jersey would require her to reschedule fewer patients, N.T., 9/17/2024, at 93, 97-98, there is no indication as to how long she would have to be at the courthouse, regardless of the location, now that she is no longer a party to the action. Furthermore, the fact that Dr. Axelrod finds driving to Philadelphia stressful does not constitute grounds for dismissing the action for inconvenience.

The trial court also points to eight additional "potential witnesses" identified by Appellees who participated in the care Elizabeth received and are located in New Jersey.[7] However, Appellees failed to demonstrate, either before the trial court or in their brief before this Court, that any of these witnesses would not or could not attend trial in Pennsylvania, or that it would

_____

[7] As Appellees correctly observe, the costs of retaining and presenting experts cannot be weighed in the private factors. *See Aerospace Fin. Leasing, Inc. v. New Hampshire Ins. Co.*, 696 A.2d 810, 814 (Pa. Super. 1997) (noting the location of expert witnesses is not given significant weight in forum non conveniens analysis, because experts are selected by the parties and are available virtually anywhere in the United States).

be more costly to secure their presence in Pennsylvania. *See* Appellees' Brief at 19-20; *see also* Motion to Dismiss, 3/26/2024, at 12-14. It is insufficient for Appellees to create a general list of "potential witnesses" who are located in another forum to support the transfer of a matter pursuant to the doctrine of forum non conveniens; rather, as stated above, the test requires, in relevant part, consideration of "the relative ease of access to sources of proof," the ability to require the attendance of unwilling witnesses, and "the cost of obtaining attendance of willing[] witnesses." *McConnell*, 221 A.3d at 227.[8]

From the Duxburys' point of view, of the witnesses mentioned by Appellees, only Dr. Axelrod was an important witness. Certainly, any difficulty in securing her testimony in this action by the Duxburys "is not a valid reason to override the plaintiff's forum preference." *Vaughan Est. of Vaughan v. Olympus Am., Inc.*, 208 A.3d 66, 77 (Pa. Super. 2019) (citation omitted);

_____

[8] Longstanding precedent from this Court further required that "[t]he party seeking the transfer must clearly specify the key witnesses to be called[.]" *See, e.g., Bochetto v. Dimeling, Schreiber & Park*, 151 A.3d 1072, 1083 (Pa. Super. 2016) (quoting *Petty v. Suburban Gen. Hosp.*, 525 A.2d 1230, 1234 (Pa. Super. 1987)). During the pendency of this appeal, however, our Supreme Court held that the "'key witness' requirement finds no support in [that] Court's precedent and imposes an excessively high burden upon the defense[,]" expressly overruling this aspect of *Petty*. *Tranter v. Z&D Tour, Inc.*, 343 A.3d 1106, 1114, 1127-29 (Pa. 2025). Although *Tranter* (and *Petty*) involved a petition to transfer venue based upon the doctrine of forum non conveniens—which has a separate standard governed by Rule 1006(d) of our Rules of Civil Procedure—we nonetheless heed the directive of the *Tranter* Court in this action in an abundance of caution, as our Supreme Court likewise has not endorsed the "key witness requirement" when considering a motion to dismiss for forum non conveniens pursuant to 42 Pa.C.S. § 5322(e).

*see also Walker*, 205 A.2d at 45 (noting the "impracticability, in fact, impossibility, of permitting residence of witnesses to govern the forum" where witnesses were located in different jurisdictions). Indeed, if the Duxburys are unable to introduce the evidence they need to establish their case, it benefits Appellees and does not support a finding of inconvenience. *See McConnell*, 221 A.3d at 229 (noting that the plaintiff has the obligation to procure evidence to meet their burden of proof at trial to prove causation and damages, and if the plaintiff fails to elicit such evidence at trial, it benefits the defendant and does not establish an inconvenience).

Moreover, although the trial court recognized that two of Elizabeth's subsequent treating doctors are located in Philadelphia, it conducted no analysis as to whether Pennsylvania would be a more convenient forum for them. *See* Trial Court Opinion, 2/10/2025, at 8. And both the Duxburys and Appellees identified additional witnesses not located in either Pennsylvania or New Jersey. As these witnesses would have to travel regardless of where the trial takes place, the location of these witnesses favor neither forum, as there is no support in the record that a trial held with these witnesses in New Jersey would be more expeditious or inexpensive than in Pennsylvania.

*Access to Sources of Proof*

The trial court noted, without elaboration, that all medical records related to Elizabeth's alleged injury are located in New Jersey. The ability to obtain documents and medical records related to the procedure, however,

would be subject to the issuance of subpoenas and does not provide a valid reason to change forums. *See id.*; *see also D'Alterio v. New Jersey Transit Rail Operations, Inc.*, 845 A.2d 850, 854 (Pa. Super. 2004) (finding dismissal under forum non conveniens was improper where defendant "failed to allege that its access to sources of proof or to witnesses would be impeded by trial in Philadelphia"). To that end, Appellees' contention that New Jersey Rules of Civil Procedure require subpoenas to be served by New Jersey admitted attorneys is of no moment, as counsel for the Duxburys indicate that all of the members of its law firm are licensed to practice in New Jersey. The Duxburys' Brief at 41; *see also* Appellees' Brief at 18-19. In any event, because Appellees practice and have their principal place of business in Philadelphia County, it is not clear that the medical records could not also be obtained from there. Additionally, Elizabeth was treated by doctors in Philadelphia after her alleged injury and those medical records would reasonably be expected to be accessible from Pennsylvania.

Finally, although the trial court characterizes Appellees' principal place of business in Philadelphia as an "address," this Court has recognized that for defendants with corporate offices located in Pennsylvania, "in terms of convenience for those defendants, that forum state seems as good as any other." *McConnell*, 221 A.3d at 230; *see also Wright v. Aventis Pasteur, Inc.*, 905 A.2d 544, 551 (Pa. Super. 2006) ("In fact, Philadelphia County, with

its proximity to the relevant corporate offices of four appellees-defendants, appears to be quite a convenient jurisdiction for the trial of the case.").[9]

*Conclusion – Private Factors*

Based on the foregoing, we conclude that the court erred as a matter of law in its assessment of the private factors. Determining forum non conveniens required the trial court to consider the relative convenience of Pennsylvania, which it failed to do. The trial court instead engaged in a "one-sided discussion" of factors weighing against the Duxbury's choice of forum. **Bochetto**, 94 A.3d at 1054; **see also Wright**, 905 A.2d at 550 ("The trial judge ... did not discuss the arguments presented by appellants, but focused

---

[9] Although we find that the location of Appellees' principal place of business in Pennsylvania weighs in favor of maintaining the Duxburys' chosen forum, we reject the Duxburys' request that this Court implement a bright line rule that corporate defendants who have a principal place of business in Pennsylvania cannot remove any action against it from Pennsylvania. This Court has repeatedly held that while a company's principal place of business in Pennsylvania supports venue, "[i]t does not preclude dismissal based on forum non conveniens." **Wright**, 215 A.3d at 994; **accord Hovatter v. CSX Transportation, Inc.**, 193 A.3d 420, 427 (Pa. Super. 2018). Indeed, as noted above, "[t]he doctrine of forum non conveniens provides the court with a means of looking beyond technical considerations such as jurisdiction and venue to determine whether litigation in the plaintiff's chosen forum would serve the interests of justice under the particular circumstances." **Hurt for Est. of Jones**, 250 A.3d at 1234. The location of a company's principal place of business is a factor that must be weighed in conjunction with the other public and private factors. **See McConnell**, 221 A.3d at 228; **see also Walker**, 205 A.2d at 46 (in determining whether the weighty reasons compel dismissal of the action in Pennsylvania, our Supreme Court held that one of the factors in favor of Pennsylvania as a proper forum was that the defendant's principal place of business was in Pennsylvania). We are bound by these decisions.

- 19 -

primarily on the parties' lack of ties to [Pennsylvania]."). Moreover, although the deference required to be provided to the Duxburys' chosen forum is limited, the record does not reflect any deference given to their decision to file suit in Pennsylvania. *See Bochetto*, 94 A.3d at 1056; *see also McConnell*, 221 A.3d at 227; *Wright*, 215 A.3d at 991.

Assessed as the law requires, the relevant private factors—the ease of access of sources proof (including medical records), the availability of process for unwilling witnesses, and the cost of obtaining witnesses—do not strongly militate in favor of moving this litigation to New Jersey. Pointedly, there is no evidence that New Jersey is a more convenient forum where the litigation can be conducted more easily, expeditiously, and inexpensively than in Pennsylvania. There are witnesses located in both jurisdictions; compulsory process is available to secure the attendance of any witness who will not voluntarily attend; the necessary evidence can be accessed easily in both New Jersey and Pennsylvania; and the defendants have their principal place of business in Philadelphia. Therefore, the trial court abused its discretion in finding the private factors weighed in favor of dismissal of the action from Pennsylvania. *See McConnell*, 221 A.3d at 229-30 (concluding that the trial court abused its discretion in granting motion to dismiss because the defendant failed to establish private factors where it had corporate offices in Pennsylvania and plaintiff's difficulty in securing relevant evidence was not a concern); *see also Failor*, 248 A.3d at 537-39 (assessing the evidence

presented before the trial court and concluding that the private factors did not strongly weigh against the plaintiffs' chosen forum).

Public Factors

The trial court did not discuss the public factors at all; instead, it simply stated that it "reviewed the competing arguments as to the required considerations in forum non conveniens matters, and [found] under the totality of the circumstances, Appellees' to be most compelling." Trial Court Opinion, 2/10/2025, at 8-9. This is error. **See McConnell**, 221 A.3d at 227-28. Further, our review of the trial court's reasoning makes clear that it based its conclusion on its finding that Philadelphia, not Pennsylvania, was an inconvenient forum. This, too, is error. **See id.** at 231 ("The trial court abused its discretion … because it disregarded Pennsylvania's interests and improperly focused on whether **Philadelphia** is a convenient forum.") (emphasis in original); **see also Failor**, 248 A.3d at 535 (finding an "error of law if the trial court makes an analysis based on the inconvenience of one county to another state because a case's lack of connection to one county does not justify dismissal from the entire state") (cleaned up). Although we could remand the case, as we have before, for the trial court to consider the public factors, **see, e.g., Bochetto**, 94 A.3d at 1056, the record fully sets forth the public factors at issue and the evidence is not in question. Therefore, in the interest of justice, we decline to remand, as we are able to analyze the public factors based on the record in this case and the clearly defined precedent.

As to the first public factor—congested centers of litigation—Appellees argue the "congestion of the Philadelphia court system is not something that can be reasonably refuted." Appellees' Brief at 28. The Duxburys do not dispute this. *See generally* The Duxburys' Brief. We agree that this factor could weigh in favor of dismissal. *See Burnett v. Penn Cent. Corp.*, 250 A.3d 1240, 1253 (Pa. Super. 2021) (noting that "there would be more administrative difficulties if the case is tried in Philadelphia, Pennsylvania" than other states); *but see Goodman by Goodman v. Pizzutillo*, 682 A.2d 363, 369 (Pa. Super. 1996) (while noting the congestion in the Philadelphia courts, concluding that "this factor alone should not be viewed as giving trial courts carte blanche authority to transfer any case which may be as conveniently litigated elsewhere").

The second public factor—whether the people of a community have some relation to the litigation—weighs against dismissal. When a defendant is incorporated in the chosen forum, that forum has a legitimate interest in adjudicating disputes involving its corporate entities. *See McConnell*, 221 A.3d at 231 (finding public factors did not support dismissal for forum non conveniens where, although other states had an interest, Pennsylvania also had an interest in whether defendant, with principal place of business and headquarters here, marketed and distributed allegedly injurious product). Further, Appellees provide medical care in Pennsylvania, and Dr. Axelrod is a licensed practitioner here.

The third and final public factor considers what law applies and whether the home forum should apply the law. The Duxburys have raised negligence claims against Appellees and the parties agree that New Jersey law applies. In this regard, Appellees had the burden to prove "that the law determined to be applicable is beyond the ken of a Philadelphia trial judge." **Wright**, 905 A.2d at 551; **see also McConnell**, 221 A.3d at 231 ("The trial court could not find that it would be inconvenient or undesirable for a Pennsylvania court to apply the law of another jurisdiction without evidence that the law of the two forums is materially different in some way or cumbersome for a judge in that forum to apply."). Appellees failed to satisfy their burden—our review of the record reveals no claim or contention raised by Appellees that New Jersey law differs materially from that of Pennsylvania or that it would somehow be burdensome for a Pennsylvania judge to apply it in this matter. Thus, this factor also weighs against dismissal.

Examining the public factors as the law requires, and with the limited deference to be afforded to the Duxburys' chosen forum, Pennsylvania's interest in this litigation is as strong, if not stronger, than New Jersey's interest. Appellees therefore "failed to provide sufficient evidence of public factors to support overriding the [Duxbury's] choice of forum." **Failor**, 248 A.3d at 540.

## Conclusion

After a careful consideration of all the factors relevant to a forum non conveniens analysis, and with the limited deference required in this matter to the Duxburys' chosen forum, Pennsylvania is a proper forum for this action. The trial court here failed to consider the evidence presented as required under the law related to the private factors analysis and failed entirely to conduct an assessment of the public factors. We therefore conclude that trial court abused its discretion in dismissing the action and directing the Duxburys to file the action in New Jersey. **See McConnell**, 221 A.3d at 232 (concluding that the trial court misapplied the law in dismissing the case on forum non conveniens, noting there were not weighty reasons to disturb the plaintiff's forum choice); **Vaughan**, 208 A.3d at 77 (reversing dismissal order where the public and private factors supported the plaintiff's chosen forum); **see also Failor**, 248 A.3d at 534-35 (stating "a court will … not dismiss for *forum non conveniens* unless justice *strongly* militates in favor of relegating the plaintiff to another forum") (emphasis in original; citation omitted). Accordingly, we reverse the order and remand for further proceedings.

Order reversed. Case remanded for further proceedings in Philadelphia County. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>3/25/2026</u>